**ASARCO, LLC, a Delaware corporation and Asarco Master, Inc., a Delaware corporation, Plaintiffs,**

**v.**

**MONTANA RESOURCES, INC., a Montana corporation, and Montana Resources, LLP, a Montana limited liability partnership, Defendants.**

No. 1:12–CV–137.

United States District Court,
S.D. Texas,
Brownsville Division.

Signed July 22, 2013.

Brian R. Holland, Kenneth K. Lay, Crowley Fleck, Helena, MT, Gregory L. Evans, Tanya Guerrero, Daphne HSU, James G. Warren, Laura G. Brys, Integer Law Corporation, Los Angeles, CA, Thomas M. Farrell, McGuire Woods LLP, Houston, TX, William Adam Duerk, IV, Milodragovich, Dale & Steinbrenner, PC, Missoula, MT, Dion William Hayes, McGuire Woods LLP, Richmond, VA, Patrick L. Hayden, McGuire Woods LLP, New York, NY, for Plaintiff Asarco, LLC, a Delaware Corporation.

A. Christopher Edwards, A. Clifford Edwards, John Williams Edwards, Triel Culver, Edwards Frickle Culver, Billings, MT, Aaron J. Power, Eric M. English, Henry J. Kaim, Mark W. Wege, Penn C. Huston, King & Spalding LLP, Houston, TX, for Defendant Montana Resources, Inc., a Montana Corporation.

### Memorandum Opinion and Order

ANDREW S. HANEN, District Judge.

Pending before the Court is the Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure filed by Montana Resources, Inc. and Montana Resources, LLP.[1] [Doc. No. 23; Br. in Supp., Doc. No. 24; Supplement to Mot., Doc. No. 78]. Having reviewed the motion, the responses thereto and the applicable law, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' motion.

### I. Factual Background and Procedural History

#### A. Montana Resources, LLP

In May 1989, AR Montana Corporation, predecessor of ASARCO Master, Inc. and a special purpose subsidiary of ASARCO, LLC,[2] entered into a written partnership agreement (the "Partnership Agreement") with Montana Resources, Inc. [Pls.' First Am. Compl., Doc. No. 46 ¶ 10]. The agreement formed Montana Resources, LLP, [*id.*], for the purposes of operating and developing certain mining properties in Butte, Montana, [Am. & Restated Agreement of Gen. P'ship, Doc. No. 82–1 § 2.01]. The initial division of partnership interests allocated 50.1% to Montana Resources, Inc. and the remaining 49.9% to AR Montana. [*Id.* §§ 3.01, 3.02]. The agreement provided that the partners would be liable for "Cash Calls" if necessary to meet the partnership's expenses, [*id.* § 8.02], and allowed for diminution of partnership interest in the event of a partner's default with respect to its "Cash Calls" obligations, [*id.* §§ 11 (defining default); 12.01]. Specifically, the agreement authorized the non-defaulting partner to "transfer an amount adequate to cover the

---

1. The Court will hereinafter collectively refer to Montana Resources, Inc. and Montana Resources, LLP as either "Defendants" or "MRI." The Court will use the full name of the entity when referring to each individually.

2. The Court will hereinafter collectively refer to ASARCO, LLC and ASARCO Master, Inc. as either "Plaintiffs" or "ASARCO." The Court will use the full name of the entity when referring to each individually.

deficit amount of the Cash Call" and to "deem such transfer to constitute a cure of ... Default ... and reduce the Partnership Interest of the Defaulting Partner by 1.0% for each $100,000 of capital the Defaulting Partner failed to contribute...." [*Id.* § 12.01(d)(ii)(B) ]. Additionally, Section 12.02 of the agreement (the "Reinstatement Provision") provided that a Defaulting Partner, whose interest had been diluted as detailed above, could be reinstated to its original status under the following circumstances:

> [T]he Defaulting Partner may cure [a] default by contributing all amounts owed ... to the Non–Defaulting Partner and the Partnership ... [after which] such Partner ... shall possess the voting power [and rights to cash distribution and other income allocations] ... it held with respect to its lowest Partnership Interest prior to the failure to pay a Cash Call....

[*Id.* § 12.02].

Beginning in October 2002, AR Montana continuously defaulted on its "Cash Calls" obligations, which eventually culminated in a reduction of its voting and distribution rights in the partnership to 0% by December 2003. [Doc. No. 46 ¶¶ 11–16]. According to Plaintiffs, Montana Resources, Inc. "purported to dissociate" AR Montana from the partnership at this time. [*Id.* ¶ 16].

**B. Bankruptcy Proceedings**

In 2005, AR Montana was merged into ASARCO Master, Inc., and later that year, ASARCO, LLC and its affiliates, including ASARCO, Master, Inc., filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Texas (the "underlying bankruptcy case"). [Doc. No. 46 ¶ 18]. *See also In re ASARCO LLC,* No. 05–21207 (Bankr. S.D.Tex. filed Aug. 9, 2005). MRI filed Proofs of Claim against ASARCO in the underlying bankruptcy case in excess of $100 million. [ASARCO's Compl. and Objection to Proofs of Claim filed by Mont. Res., Inc., Doc. No. 78–1 at 16]. Subsequently, Plaintiffs also initiated an Adversary Proceeding against MRI.[3] In their Original Complaint, filed in the Adversary Proceeding in April of 2007, Plaintiffs asserted various fraudulent transfer claims related to the 2002–2003 diminutions of ASARCO's partnership interest, an objection to MRI's Proofs of Claim, and the following breach of contract and improper expulsion claim:

> Under the Partnership Agreement, AR Montana had a right to reinstatement at its original 49.9% interest level. Upon dilution, MRI improperly expelled AR Montana from the MR Partnership but did not dissolve the MR Partnership. Though AR Montana's interest in the MR Partnership was fully diluted, AR Montana continues to enjoy rights under the Partnership Agreement ... in-

**3.** The Adversary Proceeding was docketed in the Bankruptcy Court as Adv. No. 07–02024. The Court cites to this docket number when referencing submissions to the Bankruptcy Court that were not attached as an exhibit(s) to the existing submissions before this Court. Similarly, the Court will refer to the underlying bankruptcy case docket number, No. 05–21207, when citing to documents that were submitted as part of the underlying bankruptcy case, but that were not attached to the Parties' motions here.

Furthermore, the Court is aware that ASARCO technically did not name the partnership Montana Resources, LLP as a Defendant in the Adversary Proceeding. Nonetheless, for reasons explained below, the Court believes that the partnership was, for all intents and purposes, a party to the Adversary Proceeding, and the Court accordingly denotes it as such throughout its discussion.

clud[ing] the right to reinstatement upon payment of the alleged defaults with interest.

**Accordingly, as a remedy for MRI's breach of contract, ASARCO seeks a declaration that AR Montana enjoys a right to reinstatement to its original interest level in the MR Partnership upon compliance with the appropriate terms regarding reinstatement contained in the Partnership Agreement.** ASARCO also seeks monetary damages as a remedy for income it would have received had its partnership interest not been improperly diluted.

[Doc. No. 78–1 at 15–16 (emphasis added) ]. MRI moved for the claim's dismissal, arguing that the 2002–2003 dilutions were in "strict compliance" with section 12.02(d)(ii)(B) of the Partnership Agreement; and that "[n]o partner is entitled to reinstatement of its interest under the Partnership Agreement once that interest has been diluted pursuant to section 12.01(d)(ii)(B)." [Mont. Res., Inc.'s Mot. to Dismiss the Adversary Proceeding and in the Alternative to Transfer Venue, June 11, 2007, Adv. No. 07–02024, Doc. No. 12]. ASARCO responded by amending its complaint in July of 2007. [ASARCO's First Am. Compl. & Objection to Proofs of Claim Filed by Mont. Res. Inc., Doc. No. 78–2]. In its First Amended Complaint, ASARCO dropped the breach of contract/declaratory judgment claim, leaving only two issues to be litigated: (1) whether MRI's diminutions of AR Montana's partnership interest during the years of 2002–2003 were fraudulent transfers; and (2) relatedly, whether the parties could reach a resolution regarding MRI's Proofs of Claim. On August 25, 2009, the Stipulation and Order (the "Stipulation" or "Agreed Order") dismissing the Adversary Proceeding "with prejudice" was entered. [Stipulation & Order Allowing Claims of Mont. Res., Inc. & Dismissing Adversary

Proceeding, Doc. No. 78–3]. The factual recitations of the Agreed Order imply the existence of a written settlement agreement that had been entered into as a prelude to the Stipulation. Neither side has provided that agreement to this Court nor claimed that it somehow controls the resolution of the issues herein.

Shortly after the entry of this Stipulation, on November 13, 2009, the underlying bankruptcy case similarly came to a conclusion. [Mem. Op., Order of Confirmation, & Inj., Doc. No. 78–9]. *See also In re ASARCO LLC,* 420 B.R. 314 (S.D.Tex. 2009). A Joint Disclosure Statement had been filed on July 6, 2009, to which the following proposed plans for reorganization were attached: (1) ASARCO LLC and the subsidiary Debtors' Sixth Amended Plan of Reorganization; (2) ASARCO, Inc. (referred to as "Parent" during the bankruptcy) and Americas Mining Corp. Modified Fifth Amended Plan of Reorganization; and (3) Harbinger's Second Amended Plan of Reorganization. [Joint Disclosure Statement in Supp. of the Respective Plans of Reorganization Proposed by (1) The Debtors; (2) ASARCO Inc. and Americas Mining Corp.; and (3) Harbinger Capital Partners Master Fund I, Ltd., Doc. No. 82–3 at 1]. In Section 7 of the Disclosure Statement, titled "Litigation Trust Under the Parent's Plan," Section 7.10 states in relevant part:

Article 5.10 of the Parent's Plan provides that the Debtors' claims against MRI, including those asserted in [the Adversary Proceeding], are not Litigation Trust Claims under the Parent's Plan, and will not be transferred to the Litigation Trust. Rather, the Debtors' claims against MRI are expressly reserved for Reorganized ASARCO to pursue in the ordinary course.

[*Id.* at 229].

The Fifth Amended Plan of Reorganization, to which the Disclosure Statement

referred, was later twice amended, and on August 17, 2009, a redline comparison between the Sixth and the Seventh Amended Plans was submitted to the Bankruptcy Court. [Comparison of Seventh Am. Plan to the Parent's Sixth Am. Plan of Reorganization for the Debtors under Chapter 11 of the United States Bankruptcy Code, as Modified on August 14, 2009, Doc. No. 78–8]. The comparison reveals that Article V, which included Article 5.10, and which was previously titled "Litigation Trust and SCC Litigation Trust," was deleted in its entirety. [*Id.* at 19–31]. A conformed Seventh Amended Plan (the "Plan") was then filed in the Bankruptcy Court on August 30, 2009. [Conformed Version of Parent's Seventh Am. Plan for Reorganization, Doc. No. 82–8]. Finally, on November 13, 2009, this Court entered an order (the "Confirmation Order"), confirming the Parent's Plan and concluding the main portion of the underlying bankruptcy case.[4] [Doc. No. 78–9].

The Plan that was adopted included two critical provisions for the purposes of ruling on this Motion to Dismiss: the "Release of Litigations" provision and the "Vesting and Enforcement of Causes of Action" provision. [Doc. No. 82–8 arts. 10.5, 10.13]. Both were linked to separately amended Schedules of Litigation, which specifically enumerated the causes of action thereby released or preserved. [*Id.*] The instant cause of action was not included in either Schedule. [*Id.* Exs. 2 & 9].

A chronological summary that synthesizes what happened both in the Adversary Proceeding and in the underlying bankruptcy case is included below:

- **August 2005:** ASARCO, LLC and its affiliates, including ASARCO Master, Inc., file voluntary bankruptcy petitions;

- **April 2007:** ASARCO files the Original Complaint in the Adversary Proceeding;

- **June 2007:** MRI files a Motion to Dismiss the Original Complaint in the Adversary Proceeding;

- **July 2007:** ASARCO files its First Amended Complaint in the Adversary Proceeding;

- **July 2009:** A Joint Disclosure Statement, which mentions "claims against MRI" and references Article 5.10 of the attached proposed plan for reorganization, is filed in the underlying bankruptcy case;

- **August 17, 2009:** The proposed plan for reorganization is amended, and Article 5.10 is deleted from the proposed Seventh Amended Plan in the underlying bankruptcy case;

- **August 25, 2009:** The Stipulation and Order dismissing the Adversary Proceeding "with prejudice" is entered;

- **August 30, 2009:** The proposed Conformed Seventh Amended Plan for reorganization is filed in the underlying bankruptcy case;

- **November 13, 2009:** This Court confirms the Conformed Seventh Amended Plan for reorganization, and the main portion of the underlying bankruptcy case concludes.

## C. Post–Bankruptcy Proceedings

### 1. The Reinstatement Letter

Approximately two years after the conclusion of the Adversary Proceeding and

---

**4.** This confirmation order was later amended on December 3, 2009. [Order Granting Parent's Emergency Mot. to Supplement Confirmation Order, Dec. 3, 2009, Doc. No. 82–13]. The Court need not discuss the nature of these amendments as they are not relevant to the Court's disposition of this case.

the entering of the Confirmation Order, Plaintiffs sent Defendants a letter (the "Reinstatement Letter"), dated November 15, 2011, in which ASARCO allegedly invoked the right to reinstatement in the partnership. [Doc. No. 82–14]. Specifically, Plaintiffs made a tender (the "2011 tender") of the full payment that was allegedly due pursuant to the terms of the Reinstatement Provision for ASARCO's 2002–2003 "Cash Calls" defaults. [*Id.*] It is uncontested that this is the first time that ASARCO ever made such a tender. ASARCO additionally provided MRI with notice that it would commence all appropriate actions if MRI did not accept the tender within five (5) business days. [*Id.*] Defendants failed to accept the tender or otherwise respond. [Doc. No. 46 ¶ 22].

## 2. The Pending Action

Plaintiffs instigated the instant suit approximately two and a half weeks later, in the United States District Court for the District of Montana. [Compl., Nov. 30, 2011, Doc. No. 1]. ASARCO thereafter filed its First Amended Complaint. [First Am. Compl., March 16, 2012, Doc. No. 46].[5] In the Complaint, ASARCO asserted that Defendants, in failing to respond to the Reinstatement Letter and refusing the tendered payment, "have wrongfully denied and refused Plaintiffs' Reinstatement, in breach of their Partnership Agreement." [Doc. No. 46 ¶ 22]. Based on this alleged breach, Plaintiffs request declaratory and equitable relief that would rein-

state ASARCO as a partner of Montana Resources, LLP. [*Id.* ¶ 24–31]. In the alternative, Plaintiffs request monetary damages, including the return of any positive capital account balance under Montana state law. [*Id.* ¶¶ 24–41]. They also request an accounting pursuant to the Montana Uniform Partnership Act. [*Id.* ¶¶ 42–45].

Defendants moved to transfer the action to this Court, or in the alternative, to dismiss the case with prejudice. [Doc. No. 23; Br. in Supp., Doc. No. 24]. The United States District Court for the District of Montana granted Defendants' Motion to Transfer, but made no ruling on the Motion to Dismiss. [Doc. No. 57]. Once the transfer was complete, the parties then filed a Joint Motion for Entry of Order Authorizing Supplemental Briefing on Defendants' Motion to Dismiss and Setting Hearing, [Doc. No. 69], which this Court granted for the purposes of "submit[ting] additional briefing regarding Fifth Circuit authority relevant to the Motion to Dismiss and to further address arguments made in the Motion to Dismiss," [Doc. No. 72 at 1–2]. Defendants filed their supplemental brief in support of the motion, [Doc. No. 78], the Plaintiffs filed their response, [Doc. No. 81], and the Defendants thereafter replied, [Doc. No. 83]. The grounds that Defendants claim justify dismissal are: (1) a lack of standing; (2) judicial estoppel; and (3) *res judicata.* [Doc. No. 78 at 2–3].[6]

---

**5.** At various times throughout this opinion the Court makes reference to the "Complaint" in the instant suit. When using this terminology, the Court is referencing the First Amended Complaint [Doc. No. 46] unless otherwise indicated. In subsequent sections of this opinion, the Court also refers to the Complaint and First Amended Complaint filed in the Adversary Proceeding. In those instances, the Court adds the word "Adversary" to distinguish between this lawsuit and that one.

**6.** In discussing the pending motion, the Court uniformly cites to the Parties' supplemental briefs [Doc. Nos. 78, 81 & 83], rather than to the original briefings that were submitted to the District of Montana, given that the issues raised in the dismissal motion were governed by the law of the Ninth rather than the Fifth Circuit prior to the transfer.

In addition, this Court parenthetically notes that the Partnership Agreement's choice-of-law clause is limited to the validity, interpre-

## II. Standard of Review

■■■ A dismissal motion brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998). "Lack of subject matter jurisdiction may be found in any of one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)). *See also Gonzalez v. U.S. Dep't of Commerce Nat'l Oceanic and Atmospheric Admin.*, 632 F.Supp.2d 642, 651 (S.D.Tex.2009). In ruling on the motion, all factual allegations in the plaintiff's complaint must be accepted as true. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001). A dismissal for lack of subject-matter jurisdiction is only appropriate when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming*, 281 F.3d at 161.

■■■ Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted[.]" Fed.R.Civ.P. 12(b)(6). On a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). The court must "construe [the] facts in the light most favorable to the nonmoving party, as a motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011). To survive a motion to dismiss, a claim must be "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), with enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court need not, however, accept mere conclusory allegations. *Kaiser Aluminum*, 677 F.2d at 1050. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . ." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

■■■ On a dismissal motion, the court is generally limited to the pleadings, although it may also examine "documents attached to the complaint, and documents attached to the motion to dismiss which are central to the plaintiff's claim(s), as well as matters of public record." *Kiper v. BAC Home Loans Servicing*, 884 F.Supp.2d 561, 568 (S.D.Tex.2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Documents attached to a motion to dismiss are considered part of the

---

tation and performance of the agreement itself, and does not encompass the standing, judicial estoppel and *res judicata* issues presented here. [*See* Doc. No. 82–1 § 20.04]. Neither party has suggested that Fifth Circuit law does not govern; to the contrary, as discussed above, the Parties submitted a joint motion requesting leave from this Court to submit supplemental briefs in order to cite Fifth Circuit authority in support of their arguments. [*See* Doc. Nos. 69 & 70].

pleadings if they are referenced in the plaintiff's complaint and are central to the claims asserted therein. *See Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 n. 2 (5th Cir.2005).[7] Additionally, the court may take judicial notice of matters of public record, and consideration of these documents does not require a conversion of the dismissal motion into one for summary judgment. *See Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir.1994); *Kiper,* 884 F.Supp.2d at 568 (citing *Funk v. Stryker Corp.,* 631 F.3d 777, 780 (5th Cir. 2011)).

## III. Discussion

■ The Court will focus its initial inquiry on whether Plaintiffs have standing to prosecute the current action. "Standing is a jurisdictional requirement, and [the court is] obliged to ensure it is satisfied...." *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC),* 540 F.3d 351, 354 (5th Cir.2008) (addressing standing before *res judicata* and collateral estoppel on summary judgment motion in post-confirmation action by reorganized debtor). *See also Ramming,* 281 F.3d at 161 (rule 12(b)(1) motion filed in conjunction with other rule 12 motions should be addressed first). Further, a plaintiff's standing, or lack thereof, can dispose of the res judicata and judicial estoppel issues raised by Defendants. *See Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.),* 647 F.3d 547, 553 (5th Cir.2011) (no judicial estoppel because plaintiff had standing); *id.* (res judicata does not apply where plaintiff has standing).

ASARCO's position challenges the very foundation of all of Defendants' proffered bases for dismissal: that the instant claim was a "claim" during the bankruptcy. Specifically, ASARCO argues that the Reinstatement Letter containing the 2011 tender, which occurred subsequent to the bankruptcy, is a new operative fact that gave rise to a *new* cause of action *that did not exist during the bankruptcy.* Accordingly, the bankruptcy proceedings are irrelevant to the disposition of the issues raised in the instant suit.[8]

With respect to the claims against MRI for which all operative facts existed preconfirmation, this Court holds that Plaintiffs have no standing and are judicially estopped, and that the claims are barred by *res judicata.* Because the Court finds, however, that the breach of contract claim based on Defendants' alleged refusal of the 2011 tender is a new claim that did not accrue until after the bankruptcy proceedings concluded, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

### A. Standing

■ The United States Bankruptcy Code allows reorganized debtors to prosecute post-confirmation "any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3) (2006). To have standing to prosecute such claims, however, they must be preserved in the confirmed plan for reorganization. *United Operating,* 540 F.3d at 355 (internal quotation marks and citations omitted). Without preservation, "the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *Id.*

### 1. The Specific and Unequivocal Standard.

The seminal Fifth Circuit case addressing a reorganized debtor's standing to

---

7. Plaintiffs' Complaint references the Partnership Agreement, the Confirmation Order and the Reinstatement Letter [*See* Doc. No. 46].

8. Plaintiffs assert several arguments in the alternative, which the Court will address as needed in this order.

180

bring post-confirmation claims is *United Operating*. In *United Operating*, the Fifth Circuit held that to reserve a cause of action, "the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal." 540 F.3d at 355 (internal quotation marks and citation omitted). "Any and all claims," the *United Operating* court further held, did not meet the newly-adopted standard. *Id.* at 356. As the court wrote, "[n]either the Plan's blanket reservation of 'any and all claims' arising under the Code, nor the specific reservation of other types of claims under various Code provisions are sufficient to preserve the common-law claims [the reorganized debtor] now brings...." *Id. See also Crescent Res. Litig. Trust ex rel. Bensimon v. Burr (In re Crescent Res., LLC)*, 463 B.R. 423, 437–38 (Bankr.W.D.Tex.2011) (no standing to pursue state law causes of action where plan's language was "only generic, blanket reservations"); *Moglia v. Keith (In re Manchester, Inc.)*, No. 09–3027–BJH, 2009 WL 2243592, at *5 (Bankr.N.D.Tex. July 16, 2009) (holding no reservation of state and/or common law claims when "Plan's definition of Causes of Action is certainly broad enough to include them as claims ... [but] does not expressly identify these claims."). The court's holding in *United Operating* was recently reaffirmed in *Wooley v. Haynes & Boone L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864–65 (5th Cir.2013), in which the Fifth Circuit held that claims for breaches of fiduciary duties were not effectively preserved because "the Plan nor the disclosure statement reference[d] specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refer[red] to all causes of action ... such a blanket reservation is not sufficient...." *Id.* at 865 (citing *United Operating*, 540 F.3d at 356). *See also Texas Wyoming*, 647 F.3d at 551 (holding that reservation language that was "[u]nlike the plan in *In re United Operating*, which contained only a blanket reservation of 'any and all claims'[,]" was specific and unequivocal).

■ Language purporting to reserve certain claims may meet the specific and unequivocal standard, however, if the category of, and legal basis for the attempted preserved claims is referenced. *United Operating*, 540 F.3d at 355 (citing *Ice Cream Liquidation, Inc. v. Calip Dairies, Inc. (In re Ice Cream Liquidation, Inc.)*, 319 B.R. 324, 337–38 (Bankr.D.Conn. 2005)); *Texas Wyoming*, 647 F.3d at 552 ("*In re United Operating* ... did cite with approval *In re Ice Cream Liquidation*, for the proposition that 'the plan's categorical reservation of 'preference' claims was sufficiently specific....'"). *See also Tepper v. Keefe Bruyette & Woods, Inc.*, No. 3:11–CV–2087–L–BK, 2012 WL 4119490, at *4 (N.D.Tex. Sept. 19, 2012) ("Based on the holdings in *In re Texas Wyoming Drilling* and *In re United Operating*, the court determines that the Plan's categorical reference to and reservation of contract claims ... is sufficiently specific to reserve Plaintiff's contract claim....").[9] In *Texas Wyoming*, the debtor brought suit postconfirmation to recover pre-petition divi-

9. For reservation of statutory claims, for instance, an identification of the statutes under which such claims arise effectively preserves those causes of action. *See In re Ice Cream Liquidation*, 319 B.R. at 337–38 (reservation of preference claims was sufficiently specific where plan identified section of Bankruptcy Code pursuant to which preference claims would be sought) (cited with approval in *United*

 *ed Operating*, 540 F.3d at 355); *In re Manchester*, 2009 WL 2243592, at *4–5 (specific and unequivocal reservation found where confirmed plan identified category of claims and specifically cited statutory subsections under which such claims would be brought). *See also In re Crescent Res., LLC*, 463 B.R. at 433–34 (concluding that *In re Ice Cream Liquidation* and *In re Manchester* stood for "the

dends, alleging them to be fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, and 540. 647 F.3d at 549. The plan provided that the reorganized debtor would retain "Estate Actions," which were defined in the plan to include claims under Chapter 5 of the Bankruptcy Code. *Id.* The disclosure statement, moreover, specifically stated that "Estate Actions" included "various potential avoidable transfers[,]" and in an attached chart listed potential shareholders "who might be sued for fraudulent transfer and recovery of dividends...." *Id.* The court first addressed whether it could, for purposes of standing, consider the language included in the disclosure statement. Noting that the disclosure statement was routinely consulted for *res judicata* and judicial estoppel purposes, and noting that, as the "primary notice mechanism" for creditors, its consultation was also in line with *United Operating*'s policy rationale (which this Court addresses in-depth below), the court held that "courts may consult the disclosure statement in addition to the plan to determine whether a post-confirmation debtor has standing." *Id. See also Floyd v. CIBC World Mkts., Inc.,* 426 B.R. 622, 638 (S.D.Tex.2009) (claims were specifically and unequivocally reserved, in spite of "all claims and causes of action" language in plan, because "the Disclosure Statement is a supplement to the plan and, in combination, they accomplish the reservation of claims.") (cited with approval in *Texas Wyoming,* 647 F.3d at 551). Because the plan, read together with the disclosure statement, specifically contemplated suits against pre-petition shareholders and clearly identified fraudulent transfer claims as a category, the court held that the reservation at issue in *Texas Wyoming* was sufficiently specific and equivocal. *Id.* at 551–52.

proposition that listing causes of action by code section is 'specific and unequivocal' ...

Trial courts may find more recent instruction on the application of the specific and unequivocal standard in the Circuit's decision in *In re MPF Holdings U.S. LLC,* 701 F.3d 449 (5th Cir.2012). Prior to the decision in *Texas Wyoming,* the bankruptcy court in *In re MPF Holding U.S. LLC,* 443 B.R. 736 (Bankr.S.D.Tex.2011), *vacated,* 701 F.3d 449 (5th Cir.2012), had concluded that the specific and unequivocal test required: (1) an identification of each individual prospective post-confirmation defendant; (2) a clear indication that this defendant will, not just might, be sued; (3) the legal basis of such suit. 443 B.R. at 744–45. The Fifth Circuit vacated the bankruptcy court's order, noting that *Texas Wyoming* rejected the first and second requirements. 701 F.3d at 455. *See also Tepper,* 2012 WL 4119490, at *5 ("neither *In re Texas Wyoming Drilling* nor *In re United Operating* requires that a specific prospective defendant be included in a plan or disclosure statement to satisfy the specific and unequivocal standard for reserving claims."). With regard to "[t]he third requirement identified by the bankruptcy court—that the reorganization plan set forth the legal basis for the reserved claims[,]" the Fifth Circuit wrote, "[that] was the core holding of *United Operating.*" *Id.* at 455 n. 4. Thus, for a cause of action to be specifically and unequivocally reserved, the category of claims to which that cause of action belongs must at least be identified in the plan, the interpretation of which may be further illuminated by the disclosure statement.

## 2. Ambiguous Preservation Language and the Specific and Unequivocal Standard.

The Fifth Circuit has also recently addressed how the "specific and unequivocal"

[and] is sufficient to retain those causes of action.").

standard applies when the preservation language, which purports to reserve claims, is ambiguous. In *In re National Benevolent Association of the Christian Church (Disciples of Christ)*, 333 Fed. Appx. 822 (5th Cir.2009) (per curiam) (unpublished), the Fifth Circuit addressed whether the plaintiff, a reorganized debtor, had standing to assert post-bankruptcy legal malpractice claims that were based on representation, which had been provided prior to the initiation of bankruptcy proceedings. *Id.* at 825. The parties' dispute centered on the interpretation of the term "Professional," as that term was used in the confirmation plan. *Id.* at 827–28. The plaintiff advocated that "Professional" should be read "generally to include any attorney or law firm rendering services to the debtor regardless of whether the services were rendered during the bankruptcy proceeding or before." *Id.* at 828. The "Definitions" section of the plan, however, defined *"Professional* [to] mean[ ] a professional employed in the Bankruptcy Cases . . . ." *Id.* at 827. Thus, the Fifth Circuit noted that "[t]he plan provisions may also be construed to reserve malpractice and other claims only in respect to a professional's employment in the bankruptcy case and its fee application." *Id.* at 828. Having discussed the ambiguity, the court summarily held that the plan did not specifically and unequivocally preserve the pre-bankruptcy petition malpractice claims. *Id.* at 828–29. In so holding, the court made clear that it "need not decide which is the true or preferred interpretation of the plan's provisions in order to decide the present case." *Id* at 828.

The Fifth Circuit later clarified the reasoning of *National Benevolent Association*—and in particular, the guidance it provides for analyzing cases where the pertinent plan language for standing purposes is ambiguous—in *MPF Holdings*, 701 F.3d at 455–57.

While it is true that the court in *National Benevolent Association* acknowledged that the language in the reorganization plan may have been susceptible to more than one reading, it is not clear the court based its holding on a rule that any ambiguity in the reservation language always fails the specific and unequivocal test.

*Id.* at 456. The court also cited *In re Texas General Petroleum Corp.*, 52 F.3d 1330 (5th Cir.1995), for this point. "[I]n *Texas General Petroleum Corp.*—a case cited approvingly by *United Operating*— the Fifth Circuit found § 1123(b) standing where the reservation language truly was ambiguous." *Id.* The ambiguity considered by the court in *Texas General Petroleum Corp.*, however, concerned whether avoidance actions generally, which were categorically mentioned and thus effectively preserved by the plan, were preserved for the liquidating trustee to pursue postconfirmation, or if only those avoidance actions listed in an attached schedule were transferred. 52 F.3d at 1335–36. The ambiguity did not, as was the case in *National Benevolent Association*, go to the heart of the issue: whether post-confirmation actions had been preserved at all. Since the opinion in *Texas General Petroleum Corp.* made clear that not all ambiguities automatically signified a failure to meet the "specific and unequivocal" test, the *MPF Holdings* court rejected "a general rule that any ambiguity in the reservation language of a reorganization plan renders the reservation invalid." 701 F.3d at 456. The court did not, however, reject its reasoning in *National Benevolent Association*. It simply clarified that not all ambiguities present in the language of the plan signify a *per se* failure to meet the "specific and unequivocal" standard; rather, the ambiguity at issue matters.

### 3. Policy Rationale Underlying the "Specific and Unequivocal" Standard.

Finally, the application of the "specific and unequivocal" test has also been guided by the overall policy concern that motivated its adoption: "Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *United Operating*, 540 F.3d at 355. Providing a creditor with notice also ensures that after the bankruptcy, the "creditor, after voting on a plan, is not suddenly blind-sided by litigation or surprised if the reorganized debtor attempts to pursue a claim which [at that point in time] would only benefit the reorganized debtor, not creditors." *Crescent Resources*, 463 B.R. at 431. The court in *Texas Wyoming*, for instance, partly relied on this policy when it held that the disclosure statement could be consulted for standing purposes. 647 F.3d at 551. "Considering the disclosure statement to determine whether a post-confirmation debtor has standing is consistent with the purpose of *In re United Operating*'s requirement: placing creditors on notice of the claims the post-confirmation debtor intends to pursue." *Id.* Most recently, moreover, the Fifth Circuit emphasized notice to creditors as a critical consideration for determining when purported reservation language meets the "specific and unequivocal" standard. *See In re SI Restructuring Inc.*, 714 F.3d at 864. The *SI Restructuring* court essentially held that language that does not provide sufficient notice to creditors of the claims thereby preserved is not enough to preserve the claims. *Id. See also Crescent Resources*, 463 B.R. at 437–38 (holding that cause of action was effectively preserved under *United Operating* because "[w]hile the Plan language is more generic than language considered in other cases . . . it was sufficient to put creditors voting on the Plan on notice that 542 turnover claims may be pursued.").

### 4. Plaintiffs have no standing to assert claims against MRI that existed pre-confirmation.

■ The primary breach of contract claim pursued in the instant case is based on MRI's refusal to accept the 2011 tender, for which Plaintiffs request declaratory, equitable, or in the alternative, monetary relief. ASARCO additionally demands an accounting by MRI pursuant to Montana state law. As explained above, Plaintiffs' main argument is that this primary claim did not exist during the bankruptcy. In the alternative, however, Plaintiffs argue that if the breach of contract claim *did* exist during the bankruptcy, that it was adequately preserved. Had the instant claim existed prior to the conclusion of the bankruptcy proceedings, however, such claim was not adequately preserved for pursuit post-confirmation.

Article 10.5 of the Plan, titled "Release of Litigations," provides in relevant part:

[A]ll causes of action identified in the Schedule of Released Litigation (attached hereto as ***Parent's Plan Exhibit 2)*** . . . shall be deemed, without any notice, the entry of any other order, or any other action by any party to have been released and dismissed or withdrawn with prejudice. All other causes of action or counts thereof of the Debtors and their estates, including, without limiting, those under chapter 5 of the Bankruptcy Code (or similar state or federal law) . . . shall continue and be pursued as provided in Article 10.13. . . .

[Doc. No. 82–8 art. 10.5]. Article 10.13, titled "Vesting and Enforcement of Causes of Action," states, again in relevant part:

Any and all claims and causes of action that were owned by ASARCO or its Estate ... shall vest in Reorganized ASARCO ... and Reorganized ASARCO shall be the only Entity entitled to pursue such claims or causes of action. Attached hereto as *Parent's Plan Exhibit 9* is the Schedule of Preserved Litigation Claims that shall vest in Reorganized ASARCO....

[*Id.* art. 10.13]. In addition, Plaintiffs quote the Confirmation Order, in which this Court stated that "[a]ny and all claims and causes of action that were owned by ASARCO or its Estate ... other than those listed on the Schedule of Released Litigation ... shall vest in Reorganized ASARCO...." [Doc. No. 81 at 13; Doc. No. 78–9 at ¶ 74]. A review of the Schedules attached to both Articles 10.5 and 10.13 of the Plan, and to the Confirmation Order reveal that neither of the following was included: (1) a reservation of claims against MRI specifically; nor (2) categorical reservations of either breach of contract or common law claims. As is evident from the text quoted above, claims against MRI were not specifically referenced in Article 10.13 of the Plan or the Confirmation Order either. A categorical mention of either breach of contract or common law claims was similarly omitted.

Conversely, "claims against MRI" were specifically mentioned in Section 7.10 of the Disclosure Statement. [Doc. No. 82–3 at 229]. Again, Section 7.10 states in relevant part:

Article 5.10 of the Parent's Plan provides that the Debtors' claims against MRI, including those asserted in [the Adversary Proceeding], are not Litigation Trust Claims under the Parent's Plan, and will not be transferred to the Litigation Trust. Rather, the Debtors' claims against MRI are expressly re-

served for Reorganized ASARCO to pursue in the ordinary course.

[*Id.*]. As was explained by the Court previously, the Disclosure Statement was filed on July 6, 2009, and was attached to a prior version of the eventually Confirmed Plan. [Doc. No. 82–3 at 1]. This prior version of the Plan, however, underwent significant changes before the Plan's final version was eventually confirmed. [*See* Doc. No. 78–8]. Specifically, on August 17, 2009, Article V of the Plan, including Article 5.10, was deleted in its entirety. [*Id.*]. Additionally, on August 25, 2009, the Stipulation dismissing the Adversary Proceeding with prejudice was entered [Doc. No. 78–3], and on August 30, 2009, the Conformed Seventh Amended Plan was filed [Doc. No. 78–7]. This Court's Confirmation Order confirming the Conformed Seventh Amended Plan was entered on November 13, 2009. Thus, the Disclosure Statement was filed before the conclusion of the Adversary Proceeding, was attached to a plan version that was not adopted, and, most importantly, in reserving "claims against MRI," makes reference to an Article that does not exist in the final Confirmed Plan.

Plaintiffs have argued that the Plan language, when coupled with the Disclosure Statement, is comparable to the language the Fifth Circuit found sufficient in *Texas Wyoming*. [Doc. No. 81 at 13]. This Court, however, sees a significant difference between the Plan and Disclosure Statement in this case, and the plan and disclosure statement the Fifth Circuit considered in *Texas Wyoming*. Specifically, in *Texas Wyoming*, there was no dispute regarding whether the pertinent language of the disclosure statement was still operative at the time the plan was confirmed. Conversely, the continuing validity of Section 7.10 of the Disclosure Statement at the conclusion of the bankruptcy is hotly contested. At the heart of the dispute is

the fact that Article 5.10 of the prior version of the Plan, to which Section 7.10 of the Disclosure Statement makes reference, was subsequently deleted from the Plan in its final and confirmed version. Article 5.10, had it been included in the Plan, would have provided the following in pertinent part:

> *Claims Against Montana Resources Reserved for Reorganized ASARCO.* The Debtors' claims against Montana Resources, Inc., including those asserted in Adv. No. 07–2024, pending in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, are not Litigation Trust Claims ... Rather, the Debtors' claims against Montana Resources, Inc., are expressly reserved for Reorganized ASARCO to pursue in its ordinary course.

[Doc. No. 78–8 at 25]. Conceding that Article 5.10 would have preserved the claims against MRI, Defendants argue that the "reservation was deleted [when] the parties reached a settlement, the Stipulation and Order was executed ... and the Adversary Proceeding was dismissed with prejudice." [Doc. No. 78 at 12]. Plaintiffs maintain, however, that Article V "generally provided for the creation of a litigation trust which would pursue certain of the Debtors' litigation claims." [Doc. No. 81 at 14]. Accordingly, when Article V, including Article 5.10, was deleted, that deletion was in response to the fact that creditors were to be paid in full upon the conclusion of the bankruptcy, which obviat-

ed the need for a Litigation Trust at all. [*Id.*] This Court need not decide *why* Article V was deleted to determine Plaintiffs' standing in the instant suit. It is sufficient for this Court's purposes to note that Article 5.10's deletion from the Confirmed Plan has rendered the pertinent language of Section 7.10 of the Disclosure Statement, at the very least, ambiguous.[10]

This ambiguity, moreover, goes to the heart of the issue—whether the claims against MRI that existed pre-confirmation were preserved at all. Accordingly, the ambiguity is much more analogous to the one that was present in *National Benevolent Association,* than the one that was analyzed by the court in *Texas Petroleum Corp.* As explained above, *Texas Petroleum Corp.* involved the issue of whether all avoidance actions, and not only some listed, had been preserved for the liquidating trustee to pursue post-confirmation. *National Benevolent Association,* in contrast, involved the issue of whether any pre-petition malpractice claims had been preserved at all. Both readings of the pertinent language in *National Benevolent Association*—one that preserved the causes of action, and one that did not— were reasonable. In contrast, pursuant to either of the possible readings at issue in *Texas Petroleum Corp.*—whether all avoidance actions were preserved for the liquidating trustee to bring post-confirmation, or whether only those listed in an attached schedule—avoidance actions were

---

10. This Court parenthetically notes that Plaintiffs have made a parallel argument, albeit in a different context, while urging the Court to reach the opposite conclusion. The text of the Reinstatement Provision states that the provision applies when "the Defaulting Partner shall be deemed to be in default pursuant to Section 12.01(a) or Section 12.01(b)(i)...." [Doc. No. 82–1 § 12.02]. According to Plaintiffs, "Section 12.02 contains at least two incorrect internal citations, as

'Section 12.01(b)(i)' does not exist and Section 12.01(a) is not relevant. Therefore, the preamble to section 12.02 could be viewed as containing an ambiguity for which Plaintiffs and Defendants almost certainly will have conflicting interpretations." [Pls.' Br. Regarding Selected Issues Associated With Defs.' Mot. to Dismiss, Doc. No. 101 at 13]. Plaintiffs can hardly make the opposite argument here regarding the Plan language with a straight face.

generally identified as a category and therefore preserved. In the instant case, if Section 7.10 of the Disclosure Statement is read together with Article 10.13 of the Plan, claims against MRI are possibly preserved; however, if Section 7.10 of the Disclosure Statement is read to have been constructively deleted by the deletion of Article 5.10 from the Plan and the subsequent Stipulation dismissing the Adversary Proceeding with prejudice, then the only language that remains is the "any and all claims" of Article 10.13.

The chart below contains a summary comparison of the preservation language at issue here with the language that the Fifth Circuit has previously considered:

| Case | Preservation Language | Cause of Action Pursued Post–Confirmation | Holding |
|---|---|---|---|
| *In re Texas Gen. Petroleum Corp.*, 52 F.3d 1330 (5th Cir. 1995) | *The Plan:* "Among the property of the estate hereby distributed to the trust are those claims and causes of action listed or described on Exhibit B (including causes of action created or sanctioned by §§ 542–553)." | Fraudulent conveyance action | The liquidating trustee had standing to assert the fraudulent conveyance action. The preservation language was ambiguous as to whether the Plan preserved, for pursuit by the liquidating trustee post-confirmation, all avoidance actions or only those listed in Exhibit B. The bankruptcy court committed no clear error by employing parol evidence to resolve the ambiguity and holding that all avoidance actions belonged to the liquidating trustee. |
| *In re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2008) | *The Plan:* "Any and all claims." | Common-law claims arising from alleged mal-administration of the estate's property during bankruptcy | Plaintiff has no standing. The blanket reservation of "any and all claims" does not meet the specific and unequivocal standard to preserve post-confirmation claims. |
| | The Plan: "*Professional* means a professional employed in the Bankruptcy Cases under 11 U.S.C. §§ 357 and 1103." | Malpractice claims based on defendants' representation pre-bankruptcy petition | Plaintiff has no standing, because pre-petition malpractice claims were not specifically and unequivocally preserved. Assuming that the words "professional" and "Professional" could reasonably be interpreted to have been used interchangeably to include any attorney or law firm rendering services, regardless of whether the services were provided pre-bankruptcy petition, the plan could also reasonably be interpreted to preserve claims only insofar as they were based on representation subsequent to the initiation of bankruptcy proceedings. The Court need not resolve the ambiguity to hold that Plaintiffs have no standing. |
| *In re Nat'l Benevolent Ass'n*, 333 Fed.Appx. 822 (5th Cir.2009) | "The Debtors . . . shall release, and be permanently enjoined from any prosecu- | | |

tion or attempted prosecution of, . . . their . . . advisors, professionals, except that any Professional required to seek and obtain approval for payment of a Professional Fee claim is excluded . . ."

"The following claims shall be expressly preserved and not released: . . . (d) objections to professional compensation applications as well as any other claims, if any, by Debtors against their professionals . . . (g) claims, if any, regarding any Professional or relating to or arising from any Professional Fee claim."

---

*The Plan:*
"[T]he Reorganized Debtor shall retain all rights, claims, defenses, and causes of action including, but not limited to, Estate Actions. . . ."

Fraudulent transfer actions, pursuant to 11 U.S.C. §§ 544, 548, and 550 and the Texas Business and Commerce Code, against former shareholders for pre-bankruptcy petition dividend payments (the "Avoidance Actions")

Plaintiff had standing to bring the Avoidance Actions. The courts may refer to the disclosure statement in addition to the plan when determining whether a plaintiff has standing to bring post-confirmation claims, and the disclosure statement and plan together specifically and unequivocally preserved the Avoidance Actions.

" 'Estate Actions' is defined to include claims under Chapter 5 of the Bankruptcy Code."

*In re Tex. Wyo. Drilling,* 647 F.3d 547 (5th Cir.2011)

*The Disclosure Statement:*
"[T]he Debtor reserves all rights to pursue, at its sole discretion, any Estate Actions not limited to but including any preference to the full extent allowed under the Bankruptcy Code and applicable state laws. The Debtor may also pursue other actions including but not limited to actions under sections 542 and 549 of the Bankruptcy Code."

A chart that listed potential defendants in post-confirmation suits, and which included "[v]arious pre-petition shareholders of the Debtor' who might be sued for 'fraudulent transfer and recovery of dividends paid to shareholders[.]' "

---

*The Plan:*
"[A]ll causes of action, including but not limited to, (i) any Avoidance Action that may exist against any party identified on Exhibits 3(b) and (c) of the Debtors' statement of financial af-

Avoidance actions against parties that participated in a transaction that had been orchestrated pursuant to the reorganization plan

The plan specifically and unequivocally reserved the avoidance actions, because it stated the basis of recovery and identified each defendant by name. The bankruptcy court erred in holding that the "specific and

| Case | Plan Language | Claim | Outcome |
|---|---|---|---|
| | fairs . . . shall be transferred to the Litigation Trustee." | | unequivocal" standard required that the individual defendants be named and that the plan state that each will, rather than might be sued. The bankruptcy court's third requirement, however—that the legal basis of the suit be included—is the core holding of *United Operating*. The court could not determine the litigation trustee's standing, however, because the plan also expressly carved out certain claims from the preservation. The bankruptcy court erred in holding that the exceptions were ambiguous and that *National Benevolent Association* thus required a finding that the language was not specific and unequivocal. National Benevolent Association did not rest on a rule that all ambiguities in preservation language per se failed the "specific and unequivocal" standard, and the exclusion, in any event, was not ambiguous. The bankruptcy court's order was vacated and the case remanded to the bankruptcy court. |
| *In re MPF Holdings, U.S. LLC*, 701 F.3d 449 (5th Cir. 2011) | "Avoidance Actions [were defined as] 'any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 742(a).'" "Section 4.03 specifically excluded 'any Cause of Action released in connection with or under the Plan or by prior order of the Court' from the scope of reserved claims." | | |
| *In re SI Restructuring Inc.*, 714 F.3d 860 (5th Cir.2013) | *The Plan*: "[T]he exclusive right to enforce any claims, rights and causes of action that the Debtors or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provision of state law, or any other statute or legal theory." | Breach of fiduciary duty | The claims were not specifically and unequivocally preserved for pursuit post-confirmation. "Neither the Plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refers to all causes of action, known or unknown. As noted, such a blanket reservation is not sufficient to put creditors on notice." |

*The Disclosure Statement*: "The disclosure statement . . . included both existing claims and potential claims. The potential claims were separated into two sections: (1) 'preference and other avoidance litigation' and (2) 'potential litigation.' Under the first section, the Debtors retained all 'actions for the avoidance and recovery of estate property under Bankruptcy Code section 544, 545, 547, 548, 549, or 553(b).' The second section indicated that the Debtors 'may be potential plaintiffs in other lawsuits . . .' and would 'continue to investigate potential claims. . . .'"

---

*ASARCO, LLC v. Mont. Res., Inc.*, No. 1:12–cv–137 (S.D.Tex., filed June 15, 2012)

*The Plan*:
*Article 10.5*:
Release of Litigations . . . [A]ll causes of action identified in the Schedule of Released Litigation (attached hereto as ***Parent's Plan Exhibit 2***) . . . shall be deemed, without any notice, the entry of any other order, or any other action by any party to have been released and dismissed or withdrawn with prejudice. All other causes of action or counts thereof of the Debtors and their estates, including, without limiting, those under chapter 5 of the Bankruptcy Code (or similar state or federal law) . . . shall continue and be pursued as provided in Article 10.13.

*Article 10.3*:
Any and all claims and causes of action that were owned by ASARCO or its Estate . . . shall vest in Reorganized ASARCO . . . and Reorganized ASARCO shall be the only Entity entitled to pursue such claims or causes of action. Attached hereto as ***Parent's Plan Exhibit 9*** is the Schedule of Preserved Litigation Claims that shall vest in Reorganized ASARCO. . . .

*The Confirmation Order*:
"Any and all claims and causes of action that were owned by ASARCO or its Estate . . . other than those actions listed on the Schedule of Released Litigation (Exhibit 1 hereto) . . . shall

Breach of contract claim based on Defendants' refusal to accept ASARCO's 2011 tender of the monies owed pursuant to the Reinstatement Provision, for which ASARCO seeks specific performance reinstating it as a partner in Montana Resources, LLP. In the alternative, Plaintiffs seek monetary damages for the breach of contract and, pursuant to state law, a return of any positive capital account balance. Lastly, Plaintiffs seek an accounting under state law.

vest in Reorganized ASAR-
CO. . . ."

*The Disclosure Statement:*
Article 5.10 of the Parent's
Plan provides that the Debt-
ors' claims against MRI, in-
cluding those asserted in
[the Adversary Proceeding],
are not Litigation Trust
Claims under the Parent's
Plan, and will not be trans-
ferred to the Litigation
Trust. Rather, the Debtors'
claims against MRI are ex-
pressly reserved for Reor-
ganized ASARCO to pursue
in the ordinary course.

As is evident from the chart above, the "any and all claims" preservation in the Plan and Confirmation Order is precisely the broad-brush generic language that the Fifth Circuit has held is not specific and unequivocal. *United Operating,* 540 F.3d at 356. As the court explicitly stated, a plan's "blanket reservation of 'any and all claims'" is not "sufficient to preserve [ ] common-law claims...." *Id.* The language is not sufficient to reserve any existing claims against MRI during the bankruptcy for pursuit post-confirmation—even when coupled with the express identification of claims against MRI in the Disclosure Statement. First, although the Fifth Circuit has held "that courts may consult a disclosure statement *in addition to the plan* to determine whether a post-confirmation debtor has standing[,]" *Texas Wyoming,* 647 F.3d at 551 (emphasis added), the Circuit has never held that a non-specific blanket reservation, which would otherwise not clear the "specific and unequivocal" hurdle under *United Operating,* could be cured by a disclosure statement. *But see Floyd,* 426 B.R. at 638 (disclosure statement could supplement "any and all claims" language in the plan) (cited with approval in *Texas Wyoming,* 647 F.3d at 551). The disclosure statement in *Texas Wyoming* helped the court to interpret the reservation of "claims under Chapter 5 of the Bankruptcy Code" included in the *plan,* which certainly is more specific than the "any and all claims" blanket reservation at issue here. 647 F.3d at 549–51. The *Texas Wyoming* court further explicitly stated that "[u]nlike [a] plan ... contain[ing] only a blanket reservation of 'any and all claims,' [the debtor's] plan *and* disclosure statement" together provided sufficient detail for the debtor to have standing. *Id.* at 551–52 (emphasis added).

More importantly, the continuing impact of Section 7.10 of the Disclosure Statement at the time the Plan was actually confirmed is at the very least disputable. Subsequent to the filing of the disclosure statement, which occurred on July 6, 2009, the reorganization plan was substantially amended before being confirmed by this Court. Significantly, these amendments involved the deletion of Article 5.10, to which Section 7.10 makes reference, from the Confirmed Plan. Shortly thereafter, the Stipulation dismissing the Adversary Proceeding with prejudice was also entered. In light of this series of events, Section 7.10 is inherently ambiguous. From the face of the record, it is, at the very least, unclear whether the parties intended the reference to claims against MRI to survive both the deletion of Article 5.10 and the conclusion of the Adversary proceeding against MRI.

This ambiguity results in this Court having to consider an issue that was not before the court in *Texas Wyoming:* whether the language included in the disclosure statement—for reasons separate and apart from the fact that it was included in the disclosure statement and not in the plan—should be considered and read together with the plan. The circumstances surrounding the ambiguity present here, moreover, are much more analogous to those present in *National Benevolent Association* than in *Texas Petroleum Corp.* Accordingly, even if the Court were to take into consideration Section 7.10 of the Disclosure Statement, the language is still insufficient, because its inherent ambiguity renders the purported reservation in the Disclosure Statement invalid. *See National Benevolent Association,* 333 Fed.Appx. at 828–29 (where plan could be construed to either preserve or not preserve claims, ambiguity of reservation is not specific and unequivocal and plaintiffs have no standing). *See also In re Ice Cream Liquidation,* 319 B.R. at 333 ("The best either of those Plan references does is to create an ambiguity which must be construed against the Debtor.") (cited with approval in *United Operating,* 540 F.3d at 355). Therefore, the Plan's blanket reservation of any and all claims, even in light of the specific identification of claims against MRI in the Disclosure Statement, is not specific and unequivocal. Plaintiffs have no standing to pursue claims against MRI that were part of ASARCO's estate preconfirmation.

Recognizing that the Plan's alleged preservation of the claim was insufficient under Fifth Circuit law, Plaintiffs advance a novel argument that the "specific and unequivocal" standard is not the only test for reservation pursuant to 11 U.S.C.

§ 1123(b)(3). Turning to the underlying policy concerns in *United Operating* and its progeny, Plaintiffs attempt to distinguish the instant case by arguing that the "creditors were paid in full with interest under the Confirmed Plan" and that "the one creditor with any interest associated with the claims in the Complaint (MRI) had actual notice of such claims." [Doc. No. 81 at 9–10]. First, Plaintiffs rest their allegation of MRI's actual notice on a footnote that MRI included in one of its objections to the Confirmed Plan in the underlying bankruptcy case. [Doc. No. 81 at 10] [*See also* MRI's Br. in Opp'n to Confirmation of Parent's Modified Seventh Am. Plan of Reorganization, Aug. 23, 2009, Doc. No. 82–6 at 5 n. 4]. The footnote is attached to a clause in the main text, which objects to the plan as follows: "The MRI Action [, which is the Adversary Proceeding,] would not be dismissed, but instead would 're-vest' in reorganized ASARCO . . . ." [Doc. No. 82–6 at 5]. The footnote provides in full:

> Parent's Plan is vague on this point, insofar as the MRI Action does not show up on Parent's schedule of litigations reserved for reorganized ASARCO. *See* Plan Ex. 9 (as of August 20, 2009). Absent any provision to the contrary, however, sections 10.12 and 10.13 of Parent's Plan appear to establish a blanket rule providing that causes of action not specifically dismissed or otherwise addressed by the Plan will revest in the reorganized debtor.

[*Id.* at 5 n. 4]. This footnote barely lends credence to Plaintiffs' claim of actual notice. As is evident from the text quoted above, Defendants' position was that the Plan was *vague*—it could be interpreted to reserve claims against MRI, but not that it necessarily did.[11] Secondly, and most im-

---

11. This footnote also had the effect of warning ASARCO that the reservation of causes of action was ambiguous prior to confirmation. ASARCO took no steps to cure this ambiguity.

portantly, MRI's objection was filed with the Bankruptcy Court on August 23, 2009, which is clearly before August 25, 2009, the date on which the Stipulation dismissing the claims with prejudice was entered. The Court is thus highly skeptical that a pleading that discusses the potential preservation of claims, which was filed before the order dismissing such claims with prejudice was entered, is evidence of MRI's actual notice that ASARCO had preserved claims against Defendants at the time of confirmation, approximately two months after the Stipulation was entered.

Plaintiffs' second argument is that its failure to disclose its retention of this claim in an unambiguous way is excusable because the creditors have been fully paid. Certainly, the protection of creditors is one of the governing principles underlying this Circuit's rule requiring specific and unequivocal disclosures. Regardless, there is no precedent from this Circuit, nor have Plaintiffs cited any from any other circuit, that supports the argument that full payment relieves a debtor from making full and frank disclosures. When reduced to its most basic form, Plaintiffs' argument is one of "no harm—no foul." The Court seriously questions whether Defendants in this case would agree that there has been no harm. More importantly, this has never been the hallmark for any rule that requires truthful and unambiguous notice. Finally, the Court notes that MRI was itself a creditor, and an unambiguous notice that ASARCO was going to reassert the claim raised in the just dismissed Adversary Proceeding may have affected its position regarding confirmation.

 Regardless of the facts, which the Court acknowledges are in dispute and incapable of proper resolution at the dismissal stage, neither payment in full to creditors, nor Defendants' actual knowledge, is, as a matter of law, relevant to the question of whether Plaintiffs have standing. Although as noted the protection of creditors is clearly an important policy concern, and is at least one of the driving forces behind the adoption of the "specific and unequivocal" standard, the Fifth Circuit has never even examined the actual notice to a specific creditor. Rather, the notice to creditors that the Circuit and other courts have considered critical in this regard is the general notice to *all* creditors, not merely the actual notice of the defendant in the post-confirmation suit. *See In re SI Restructuring Inc.*, 714 F.3d at 864–65; *Crescent Resources*, 463 B.R. 423. Accordingly this Court holds that *United Operating* and its progeny, which hold that blanket reservations of claims do not provide standing to pursue such claims post-confirmation, apply even when actual notice is alleged and creditors have been paid in full.[12]

## B. Judicial Estoppel

Defendants raised judicial estoppel as a further ground upon which this Court may dismiss Plaintiffs' suit. [Doc. No. 78 at 14–17].[13] Judicial estoppel raises, to a certain extent, issues that are duplicative of what the Court already considered with

---

**12.** Because the Court holds that Plaintiffs have failed to preserve existing claims against MRI during the bankruptcy, the Court does not address Defendants' further argument that even if the Plan were interpreted to reserve causes of action for ASARCO LLC, it did not reserve causes of action belonging to ASARCO Master, Inc. [*See* Doc. No. 78 at 13–14].

**13.** Judicial estoppel is a proper consideration on a motion to dismiss. *See In re Superior Crewboats*, 374 F.3d 330 (5th Cir.2004) (granting motion to dismiss on judicial estoppel grounds).

regard to standing. *See Texas Wyoming,* 647 F.3d at 553; *TXCO Res., Inc. v. Peregrine Petroleum, LLC (In re TXCO Res.), Inc.,* No. 09–5125–RBK, 2010 WL 8753253, at *1 (Bankr.W.D.Tex. Oct. 27, 2010) (finding no standing, claims "are, for the same reasons, precluded by the doctrine of judicial estoppel."). The doctrine and its purposes are, nevertheless, clearly distinct. Accordingly, the Court will address the application of judicial estoppel separate and apart from the conclusions reached above.

### 1. Purposes of the Doctrine

■■■■■ "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.),* 374 F.3d 330, 333 (5th Cir.2004). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* It is generally invoked in instances "where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* at 334–35.

■■■■ Detrimental reliance by the party-opponent, however, is not a pre-requisite for the doctrine's application. *See Love v. Tyson Foods, Inc.,* 677 F.3d 258, 261 (5th Cir.2012). "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, *rather than the litigants,* detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Id.* (internal quotation marks and citations omitted). Fifth Circuit precedent is clear that the main purpose furthered by the doctrine is to protect the integrity of the courts—not to punish or protect individual litigants. *See, e.g., Love,* 677 F.3d at 261; *Superior Crewboats,* 374 F.3d at 334; *Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 205 (5th Cir.1999).[14]

■■■■ In the bankruptcy context, judicial estoppel is applied "against the backdrop of the bankruptcy system and the ends it seeks to achieve." *Reed v. City of Arlington,* 650 F.3d 571, 574 (5th Cir.2011) (quoting *Coastal Plains,* 179 F.3d at 208). "[It] must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermine the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.* Estoppel is particularly appropriate when the debtor "fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Love,* 677 F.3d at 261–62 (quoting *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 600 (5th Cir.2005)). This is because "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Id.* at 261 (quoting *Coastal Plains,* 179 F.3d at 208).

### 2. Factors Guiding the Doctrine's Application

■■■■ As an equitable doctrine, the application of judicial estoppel is entrusted

---

**14.** This is in contrast to the doctrine of equitable estoppel, which does take into consideration the reliance that one party may have placed on an opposing party's past representations. "Judicial estoppel looks to the connection between the litigation and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3rd Cir.1988) (citing *USLIFE Corp. v. U.S. Life Ins. Co.,* 560 F.Supp. 1302 (N.D.Tex.1983)) (cited approvingly in *In re Coastal Plains,* 179 F.3d at 211).

to the court's discretion. *See DK Joint Venture 1 v. Weyand,* 649 F.3d 310, 319 n. 10 (5th Cir.2011) (citing *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). "[J]udicial estoppel is not governed by 'inflexible prerequisites or an exhaustive formula for determining [its] applicability,' and numerous considerations 'may inform the doctrine's application in specific factual contexts.'" *Love,* 677 F.3d at 261 (quoting *New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808). Nevertheless, three primary considerations govern the application of the doctrine in this Circuit: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* (quoting *Reed,* 650 F.3d at 574).

■ In deciding whether to apply judicial estoppel, the court may additionally consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Weyand,* 649 F.3d at 319 n. 10 (citing *New Hampshire,* 532 U.S. at 750–51, 121 S.Ct. 1808). Plaintiffs in their brief assert, however, that "[t]o succeed on their judicial estoppel claim, Defendants *must* demonstrate" this element. [Doc. No. 81 at 17 (emphasis added)]. This *is a* misstatement of the law. Although a party's unfair advantage or detriment may be considered, it is not necessary for judicial estoppel to bar a suit. The Supreme Court in *New Hampshire,* while indicating that a party's unfair detriment and/or the opposing party's unfair advantage was a relevant factor for the application of judicial estoppel, 532 U.S. at 751, 121 S.Ct. 1808; *see also Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 399 (5th Cir.2003) (citing *New Hampshire,* 532 U.S. at 751,

121 S.Ct. 1808), also explicitly refused to adopt any stringent requirements for applying the doctrine, *see New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808. The Court instead opted to leave the decision in the discretion of the lower courts. *See New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula ... Additional considerations may inform the doctrine's application in specific factual contexts."). *See also Reed,* 650 F.3d at 576 ("Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice."). Therefore, although this Court may appropriately consider any unfair advantage or detriment that would result from allowing the present litigation to continue, it need not do so. Rather, the three primary guidelines that direct the application of judicial estoppel in this Circuit are the ones the Court previously cited: (1) that the party to be estopped has previously taken an inconsistent position; (2) that the court accepted the prior position; and (3) that the inconsistency did not result from inadvertence. *Love,* 677 F.3d at 261. Unfair advantage or detriment gained by either party is not one of these three principal guidelines, and is thus not a primary, let alone controlling, consideration. *Cf. id.* at 265 (potential unfair advantage is distinct consideration and does not create fact issue regarding inadvertence).

### i. Inconsistent Positions and the Prior Court's Acceptance of the Position

■ As applied to bankruptcy cases, an inconsistent position is present whenever a debtor fails to disclose a claim during bankruptcy, but later pursues the same claim after the bankruptcy proceedings conclude. *See, e.g. Reed,* 650 F.3d at 575–76; *Superior Crewboats,* 374 F.3d at 335. Bankruptcy debtors operate under

an "an express affirmative duty to disclose all assets, including contingent and unliquidated claims." *Love,* 677 F.3d at 261 (quoting *Coastal Plains,* 179 F.3d at 207–08) (internal quotation marks omitted). "[P]otential causes of action" must be disclosed as well. *Id.* As explained by the court in *Coastal Plains,* the scope of the disclosure requirement is particularly broad—so long as "the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." 179 F.3d at 208. The importance of this disclosure requirement cannot be understated. "[T]he integrity of the bankruptcy system depends upon full and honest disclosure by debtors of all of their assets." *Id.* (emphasis omitted).

> The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* (emphasis omitted). In light of these duties and obligations, a debtor's failure to disclose a claim during the bankruptcy "is tantamount to a representation that no such claim existed." *Superior Crewboats,* 374 F.3d at 335. Pursuing an undisclosed after the bankruptcy is therefore inconsistent with the debtor's prior position. To determine whether a debtor properly disclosed a certain claim, courts routinely refer to the debtor's bankruptcy schedules, its statements of affairs, and, if applicable, the reorganization plan. *See, e.g. Love,* 677 F.3d at 261 (plan and schedules); *Coastal Plains,* 179 F.3d at 203 (schedule and statement of affairs).

Furthermore, if the debtor fails to disclose a claim, and the bankruptcy court relies on the non-disclosure in steering the bankruptcy case to a conclusion, the bankruptcy court has necessarily accepted the debtor's prior position. *See Superior Crewboats,* 374 F.3d at 335 (bankruptcy court adopted position that debtor did not possess personal injury claim by issuing "no-asset" discharge); *Love v. Tyson Foods, Inc.,* No. 3:09CV268–TSL–JCS, 2010 WL 114243, at *2 (S.D.Miss. Jan. 7, 2010), *aff'd,* 677 F.3d 258 (5th Cir.2012) ("Love's plan of confirmation was initially approved ... based on the bankruptcy court's impression, as drawn from his bankruptcy schedules, that Love had no assets with which to pay creditors."). "Adoption does not require a final judgment; rather it only requires 'that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *Superior Crewboats,* 374 F.3d at 335 (quoting *Coastal Plains,* 179 F.3d at 206).

### ii. Inadvertence

The courts have also uniquely developed the third primary consideration—the inadvertence by the party against whom judicial estoppel is sought. "[I]n considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory duty [of disclosure] is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love,* 677 F.3d at 262 (quoting *Coastal Plains,* 179 F.3d at 210) (internal quotation marks omitted). A debtor's motive to conceal is presumed as a matter of law—because of the structure of the bankruptcy process, a debtor that fails to disclose a claim during the bankruptcy, but later pursues it after discharge or confirmation, always has the potential

196

to gain a windfall. *See id.* As explained by the court in *Love:* "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from non-disclosure." *Id.* Therefore, once a showing has been made that the debtor failed to disclose, as required by the Bankruptcy Code, the claims being asserted post-bankruptcy, the burden shifts to the former debtor "to provide some explanation for his failure to meet his disclosure obligations." *Id.* at 263 n. 2.

**3. Claims against MRI that existed during the bankruptcy are judicially estopped from being asserted herein.**

■ Judicial estoppel bars ASARCO from seeking in the instant suit the adjudication of claims against MRI that existed but were undisclosed during the bankruptcy. The Bankruptcy Code imposes upon debtors an affirmative duty to disclose all assets. See *Love,* 677 F.3d at 261. ASARCO Master, Inc. responded "none" to item 21 of Schedule B, which directed the debtor to list "[o]ther contingent and unliquidated claims." [*See* ASARCO Master, Inc. Schedules and Statement of Financial Affairs, Dec. 30, 2005, No. 05–021207, Doc. No. 1396 at 8]. ASARCO then initiated the Adversary Proceeding. [*See* Doc. No. 78–1]. While the Adversary Proceeding was pending, ASARCO filed its Disclosure Statement in the underlying bankruptcy case, which included an express reservation of "claims against MRI, including those asserted in [the Adversary Proceeding] ... for Reorganized ASARCO to pursue in the ordinary course." [*See* Doc. No. 82–3 at 229]. Approximately a month later, the Stipulation dismissing the Adversary Proceeding with prejudice was entered. [*See* Doc. No. 78–3]. The underlying bankruptcy case was then concluded and the Plan confirmed. As the Court discussed in detail above, ASARCO failed to preserve any existing claims against MRI in the Confirmed Plan.

Therefore, to the extent that the Complaint herein encompasses claims that existed during the bankruptcy, those claims are barred by judicial estoppel. It is insufficient for disclosure purposes that such claims were either asserted in the Adversary Proceeding or referenced in the Disclosure Statement—if ASARCO was of the view that the Stipulation did not fully settle all existing claims against MRI during the bankruptcy, then ASARCO had a duty to disclose its belief in that regard after the dismissal with prejudice was entered. *See Coastal Plains,* 179 F.3d at 209–10. In *Coastal Plains,* the Fifth Circuit held that judicial estoppel barred a bankruptcy trustee and debtor successor-in-interest from filing an amended complaint in an adversary proceeding that the debtor had abandoned after the relief that the proceeding originally sought was granted. *See id.* at 205–13. The debtor had initiated the adversary proceeding shortly after petitioning for bankruptcy in order to obtain the return of certain inventory the defendant, a creditor, had in its possession. *Id.* at 202. When the bankruptcy court ordered the return of the inventory as a violation of the automatic stay, the debtor abandoned the proceeding. *See id.* at 203. The debtor then proceeded to neither list the claim as an asset nor include it as an offset to the liabilities owed to the defendant creditor in its schedules. *Id.* The bankruptcy case then concluded, but later re-opened. Once re-opened, the debtor sought to assert new claims against the defendant by filing an amended complaint in the now long-dormant adversary proceeding. *Id.* at 203–04. The creditor argued that the debtor was judicially es-

topped from pursuing these new claims. *Id.* at 204. The debtor, on the other hand, sought to avoid the application of judicial estoppel by arguing that it had not taken inconsistent positions by abandoning the adversary proceeding after the bankruptcy court ordered the return of the inventory, but prosecuting it after the bankruptcy had been re-opened. *Id.* at 209. Specifically, the debtor argued that it had sufficiently disclosed the claims against the defendant by filing the adversary proceeding itself. *Id.* The court disagreed. *Id.* at 209–10. It reasoned that the debtor's abandonment of the adversary proceeding after the return of the property, and its later failure to schedule the claims as either an asset or an offset to liabilities in its schedules, was tantamount to a representation that all claims against the defendant had been settled. *Id.*

The Court finds the reasoning of *Coastal Plains* applicable here. The Adversary Proceeding was settled after ASARCO's Disclosure Statement was filed. If ASARCO wished to retain causes of action against MRI that either were or could have been brought within the context of the Adversary Proceeding, or if ASARCO believed that other claims against MRI still existed that were outside the purview of the Stipulation, then ASARCO had the duty to disclose this position by either filing amended bankruptcy schedules or an amended disclosure statement, or by preserving such claims in the Plan. Like the debtor's silence following the return of the inventory in *Coastal Plains* amounted to a position that all claims against the defendant creditor had been settled, ASARCO's silence following the dismissal with

prejudice of the Adversary Proceeding was tantamount to a position that all claims against MRI that existed during the bankruptcy had been extinguished. The Bankruptcy Court (and the creditors) relied on this position by confirming the Plan, which failed to reserve any claims against MRI. ASARCO, moreover, has failed to raise any issue of fact regarding whether its failure to comport with its disclosure obligations was inadvertent. Nowhere in its pleadings or responses to Defendants' motion did ASARCO allege any facts explaining why it failed to disclose to the Bankruptcy Court after the dismissal with prejudice was entered that claims against MRI still remained.

The application of judicial estoppel to bar claims against MRI that existed during the duration of the bankruptcy proceedings is thus proper. ASARCO, by failing to disclose claims against MRI after the dismissal with prejudice was entered in the Adversary Proceeding, assumed a position that all existing claims had been settled. The Bankruptcy Court clearly accepted this position by confirming the Plan, which did not preserve any such claims. Additionally, taking all of the well-pleaded facts as true, ASARCO has failed to raise any issue regarding whether its non-disclosure was inadvertent. Accordingly, ASARCO is judicially estopped from asserting any claims against MRI that existed during the bankruptcy.

## C. *Res Judicata*

■■■■■ The third attack on ASARCO's claim herein is that it is barred by *res judicata*.[15] It is undisputed that ASARCO filed the Adversary Proceeding against MRI based upon a substantially similar

---

**15.** *Res judicata* is an affirmative defense generally not resolvable on a motion to dismiss. *See Wang v. Prudential Ins. Co. of Am.*, 439 Fed.Appx. 359, 363 (5th Cir.2011) (citing *Test Masters Educ. Servs.*, 428 F.3d at 570 n. 2). Nevertheless, ASARCO, in their numerous re-

sponses to Defendants' motion, has never objected that *res judicata* is not properly before this Court at this stage of the proceedings. [*See* Doc. Nos. 35, 55 & 81]. In contrast, ASARCO has vigorously argued the merits of the *res judicata* argument and has attached

fact situation as the one presented here. In April of 2007, years before confirmation, and while MRI was pursuing certain Proofs of Claims totally well in excess of $100 million, ASARCO filed "ASARCO's Complaint and Objection to Proofs of Claim Filed by Montana Resources, Inc." [*See* Doc. No. 78–1]. That pleading delineated in detail the series of transactions that form part of the basis of this lawsuit—with the exception, of course, of the Reinstatement Letter and MRI's subsequent rejection of the 2011 tender. After setting out the factual background of its investment in the interests that it currently seeks to reclaim, ASARCO in its 2007 pleading set out three causes of action: (1) Fraudulent Transfer Under 11 U.S.C. § 544(b)(1); Montana Code Ann. § 31–2–333 (2005); (2) Fraudulent Transfer Ann. § 31–2–334; and (3) Breach of Contract and Improper Expulsion.

As part of the pleading pursuant to this third cause of action, titled "Breach of Contract and Improper Expulsion," ASARCO stated the following:

> Accordingly, as a remedy for MRI's breach of contract, **ASARCO seeks a declaration that AR Montana enjoys a right to reinstate to its original interest level in the MR Partnership upon compliance with the appropriate terms regarding reinstatement contained in the Partnership Agreement.** ASARCO also seeks monetary damages as remedy for income it would have received had its partnership interest not been improperly diluted.

[*Id.* at 15–16 (emphasis added) ].

While not entitling this section as an effort to seek a declaratory judgment, and while not citing 28 U.S.C. § 2201, the federal declaratory judgment statute, the first sentence of this paragraph certainly seems to be a plea for a declaratory judgment setting out ASARCO's right to reacquire its investment in the partnership. Obviously, the subsequent sentence goes further and requests money damages more in line with the "Breach of Contract" title given to this third cause of action. The request for money damages, however, is not tied to the prior right to reinstatement for which ASARCO seeks a declaration; rather, it is prayer for coercive relief meant to remedy MRI's alleged 2002/2003 dilutions of ASARCO's partnership interest.

This pleading, filed in April of 2007, was soon amended by ASARCO in July of that same year. [*See* Doc. No. 78–2]. In ASARCO's First Amended Complaint and Objection to Proofs of Claim Filed by Montana Resources, Inc., the entire third cause of action (whether interpreted as a breach of contract or as a declaratory judgment action or both) was dropped. The current record is slim on how actively these claims were pursued and defended, nor would the level of activity necessarily be relevant to the dismissal motion currently pending before this Court. Suffice it to say, the Adversary Proceeding was eventually disposed of pursuant to an Agreed Order filed by MRI and ASARCO and signed by the judge in August of 2009, shortly before plan confirmation. [*See* Doc. No. 78–3]. That Agreed Order dismissed the Adversary Proceeding with prejudice. It also resolved the treatment

---

exhibits of its own for this Court's consideration. [*See* Doc. No. 81 at 1 n. 1; Doc. No. 82]. This Court accordingly takes judicial notice of the filings before the Bankruptcy Court, all of which are matters of public record, and rules on Defendants' *res judicata*

contention on a Rule 12(b)(6) standard. *See Wang,* 439 Fed.Appx. at 363 (12(b)(6) standard applies where nonmoving party failed to object that *res judicata* not properly before court at dismissal stage); *Test Masters Educ. Servs.,* 428 F.3d at 570 n. 2 (same).

to be given the pending Proof of Claims that MRI had filed. As stated earlier, the factual recitations imply the existence of a written settlement agreement that had been entered into as a prelude to the Stipulation, but neither side has provided an agreement to this Court or claimed that it somehow controls the resolution of the issues herein.

MRI's position before this Court is simple and supported by centuries of legal precedent: in a later action, *res judicata* bars all claims which were brought or could have been brought in the earlier action. The entire Adversary Proceeding, according to MRI, concerned the very claims being made herein. The legal claim for reinstatement being made now not only could have been brought in the Adversary Proceeding, it was brought in the Original Complaint.[16] Therefore, this case should either be dismissed, or alternatively a summary judgment should be rendered in MRI's favor.

ASARCO's reply is much more nuanced. First, it argues that the law of *res judicata* would not bar this action given the manner in which the issues in the Adversary Proceeding were pursued and later concluded. Secondly and relatedly, it argues that it never sent a proposed demand for rein-

statement (one which included the required tender of past due amounts) to MRI until 2011; therefore, it never had a ripe breach of contract claim like the one asserted herein until 2011. As such, the earlier adversary action could not be the basis of a *res judicata* bar, despite the fact that the Bankruptcy Court eventually dismissed its claims with prejudice.

### 1. Controlling Law

■■■ "[A] bankruptcy judgment bars subsequent suit if: (1) both cases involve the same parties; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior decision was a final judgment on the merits; and (4) the same cause of action is at issue in both cases." *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993).

In the instant case, neither party seriously contends that the Bankruptcy Court lacked jurisdiction to preside over the prior suit.[17] Further, while the parties have not conceded that they are the exact same parties to the earlier Adversary Proceeding, neither had put forth a particularly valid argument for disputing this element.[18] That being said, this Court will

---

**16.** To the extent that Defendants base their *res judicata* argument on this Court's Confirmation Order, the Court relies on its analysis pertaining to Plaintiffs' standing to bring the instant suit, and its conclusion that the breach of contract claim asserted herein accrued post-bankruptcy, as explained in-depth below, in denying Defendants' motion.

**17.** Plaintiffs in a footnote suggested that the Bankruptcy Court, had it adjudicated the Breach of Contract and Improper Expulsion claim, would not have had the "constitutional authority to determine a non-debtor's liability...." [Doc. No. 81 at 22 n. 22]. Since the Court rules that the instant suit is not barred by *res judicata* for other reasons, the Court does not address Plaintiffs' suggestion in this regard.

**18.** The Court is not persuaded by Plaintiffs' argument that *res judicata* does not apply because the Adversary Proceeding was brought in Plaintiffs' representative capacity as "debtor-in-possession." *[See* Doc. No. 81 at 20]. In Chapter 11 bankruptcy proceedings, the "debtor-in-possession" serves as the trustee of the debtor's estate. *See* 11 U.S.C. §§ 1101(1), 1107(a); *Yellowhouse Mach. Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir.1983) ("[A] debtor-in-possession holds its powers in trust for the benefit of creditors." (internal quotation marks omitted)). Although prior litigation by a party in a representative capacity does not bar a subsequent suit by the same party in its individual capacity, *see Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir.1986) (citing *Restatement (Second) of Judgments* § 36), "[p]reclusion may be appro-

focus on the latter two elements: whether there was a judgment on the merits and whether the claims/causes of actions pleaded in the Adversary Proceeding are the same as those pursued here. This Court will address these in reverse order.

### i. Same Cause of Action

 To analyze whether the fourth prong of the *res judicata* analysis is satisfied, the Fifth Circuit has adopted the "transactional test" of Section 24 of the *Restatement (Second) of Judgments. Ries v. Paige (In re Paige)*, 610 F.3d 865, 872 (5th Cir.2010). Under the "transactional test," a claim is the same if it relates to the same "transaction, or series of transactions, out of which the [original] action arose." *Restatement (Second) of Judgments* § 24 (1984). *See also In re Paige*, 610 F.3d at 872.

> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expec-

tations or business understanding or usage.

*In re Paige*, 610 F.3d at 872 (internal quotation marks omitted). Further, when applying the transactional test, the critical issue is "whether the two actions under consideration are based on 'the same nucleus of operative facts,' rather than the type of relief requested, substantive theories advanced, or types of rights asserted." *Id.* (internal quotation marks and citations omitted). The factual predicate controls even when "several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability." *Id.* at 873 (internal quotation marks omitted). Enforcing the transactional test "is especially important in the context of [bankruptcy and] plan confirmation since the creditors need and deserve all available information so they can intelligently vote on the plan." *Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 104 (S.D.Tex.1993).

 Furthermore, a debtor's failure to litigate issues that form part of a same claim previously resolved by the bankruptcy court bars such issues from being con-

---

priate ... if the person who acted as a representative in the first action had full opportunity and incentive to protect his own personal interests[,]" 18A Charles Alan Wright et al., Federal Practice & Procedure § 4454 (2d ed.) (citing *DiSalvo v. DiSalvo (In re DiSalvo)*, 219 F.3d 1035 (9th Cir.2000)). In *In re DiSalvo*, the Ninth Circuit held that a prior adversary proceeding was *res judicata* and barred the debtor's subsequent claims as both an individual and as debtor-in-possession. *Id.* at *1038*. In reaching this conclusion, the Ninth Circuit relied on the Supreme Court's decision in *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984): "Though speaking in a somewhat different context, the Supreme Court has explained ... that in the Chapter 11 context a debtor and debtor-in-possession are *not* to be treated as separate legal enti-

ties." *Id.* The Fifth Circuit in *Eubanks v. Federal Deposit Insurance Corp.*, 977 F.2d 166 (5th Cir.1992), further stated that the identity of parties requirement for *res judicata* was "clearly satisfied" where a Chapter 11 debtor brought suit post-confirmation against one of the creditors that had participated in the prior bankruptcy proceedings. The fact that ASARCO acted as debtor-in-possession throughout the course of the bankruptcy is therefore *irrelevant to the "identical parties" res judicata* analysis.

The Court additionally acknowledges Plaintiffs' suggestion that the identity of parties is not met because the partnership itself, MRLLP, was not named as a defendant in the Adversary Proceeding, and because, allegedly, no evidence has been submitted to support Defendants' position that the partnership was adequately represented.

sidered post-bankruptcy. *See Southmark Props. v. The Charles House Corp.*, 742 F.2d 862, 870–72 (5th Cir.1984). In *Southmark*, the court held that a prior bankruptcy court order providing for the sale of certain property barred, on *res judicata* grounds, a subsequent claim for breach of the construction loan contract for the property in question. *Id.* at 865–68. Prior to the bankruptcy, the defendant had secured financing for a real estate development project from the plaintiff. The defendant later defaulted on the loan, and the plaintiff filed suit to foreclose on the property and collect from the loan's guarantors; the plaintiff's attempt was cut short once the defendant entered into bankruptcy. During the defendant's reorganization proceedings, the parties entered into an agreement allowing for the plaintiff's acquisition of the property. The bankruptcy court approved the sale and ordered that it be made "free and clear of all ... claims[;]" once the sale was confirmed, the bankruptcy petition was dismissed, as the reorganization sale of the property had disposed of the defendant's only asset. *Id.* at 865–67. Subsequent to the bankruptcy, the defendant brought suit in state court alleging that the plaintiff had violated the construction loan agreement "by engaging in fraudulent and extortionate activities leading to and including ... the [ ] reorganization sale." *Id.* at 867. The plaintiff in response filed a declaratory judgment action in federal court to the effect that defendant's state court suit was barred by *res judicata*, in which the defendant counterclaimed, asserting substantially the same allegations it had in the state court action. *Id.* at 865–68. The court held that *res judicata* barred the counterclaim. *Id.* at 869–72. It reasoned:

> The central transaction involved in both the reorganization sale and appellants' present claim was the passing of title to and ownership of [the property] from The Charles House Corporation to Southmark in exchange for cancellation of the mortgage debt. Although appellants' present claim alleges various other acts of wrongdoing by Southmark, all of those acts are alleged to have produced or resulted from, and were integrally related to the sale of the property to Southmark. They all involved a "common nucleus of operative facts." If appellants' challenge to Southmark's right to thus take ownership of the property was extinguished by the prior reorganization action, as we hold it was, then appellants' remedies against Southmark "with respect to all or any part of the transaction, or *series of connected transactions, out of which the action arose,*" also were extinguished.

*Id.* at 871 (quoting *Restatement (Second) of Judgments* § 24(1)). The court concluded that if the defendant had wished to litigate these purported violations of the loan agreement it was now asserting, the time to do so was during the bankruptcy. *Id.* at 872. As the court stated, "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* at 872 (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). *See also Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1144 (5th Cir.1990) ("The rule is that res judicata bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication ... not merely those that were adjudicated.").

█ Plaintiffs argue against the application *of res judicata* because, as compared to the claims previously litigated, the causes of action asserted here arise "from a very different set of facts: Defendants' wrongful refusal of the Rein-

statement Letter in 2011." [Doc. No. 81 at 23]. Thus, "[t]o the extent the claims in the [2011] Complaint share any predicate facts with the [2007–2009] Adversary Proceeding ... they do not share operative facts." [*Id.* at 24]. While Defendants concede that the Reinstatement Letter is a new fact that came into existence after the resolution of the bankruptcy, they counter that the "[l]etter adds no new operative fact—[the Complaint] refers to the same series of cash calls outlined in the complaint in the Adversary Proceeding and makes an identical demand for reinstatement as Plaintiffs already made in the Adversary Proceeding." [Doc. No. 83 at 5]. Similar to the court's conclusion in *Southmark* that the defendant should have litigated its claims based on the construction loan agreement during the bankruptcy, Defendants argue here that if ASARCO wanted to litigate its right to reinstatement, the time to do so was during its bankruptcy proceedings.

Moreover, it is undisputed that the right to reinstatement was raised as an issue by ASARCO in both suits. Here, ASARCO claims that by refusing the 2011 tender, "Defendants have wrongfully denied and refused Plaintiffs' Reinstatement, in breach of the Partnership Agreement." [Doc. No. 46 ¶ 22]. In 2007, Plaintiffs also asserted this very right to reinstatement before the Bankruptcy Court: "Even after a partner had its interest diluted, the Partnership Agreement allowed a defaulting partner to cure its default ... and thereby achieve reinstatement...." [Doc. No. 78–1 ¶ 20]. As part of its "Breach of Contract and Improper Expulsion" 2007 claim, ASARCO explicitly pleaded that "[t]hough AR Montana's interest in the MR Partnership was fully diluted, AR Montana continues to enjoy ... the right to reinstatement upon payment of the alleged defaults with interest." [*Id.* 168].

A thorough review of the record of the prior suit further reveals that Defendants, at least, believed that the relative rights of the parties under the Reinstatement Provision were being litigated before the Bankruptcy Court. In Defendants' original Motion to Dismiss the Adversary Proceeding, filed before Plaintiffs amended their Complaint to drop the third cause of action, Defendants argued that "No partner is entitled to reinstatement of its interest under the Partnership Agreement once that interest has been diluted pursuant to section 12.01(d)(ii)(B). By the plain language of the Partnership Agreement ... reinstatement is only available where a Defaulting Partner's default remains uncured." [Mont. Res., Inc.'s Mot. To Dismiss the Adversary Proceeding and in the Alternative to Transfer Venue, June 11, 2007, Adv. No. 07–02024, Doc. No. 12 at 20–21].

The Court must thus determine the preclusive effect of the Bankruptcy Court's order dismissing the Adversary Proceeding with prejudice—and particularly, the effect, if any, of ASARCO's 2007 pleadings regarding its right to reinstatement on its claim here for coercive relief based on an alleged breach of the same contractual right.

ASARCO asserts that the first time it ever tendered the monies necessary to invoke its right to reinstatement was in 2011, after the conclusion of the bankruptcy—a factual allegation that Defendants do not dispute and which at this stage the Court must accept as true. The general rule is that "[a] subsequent wrong constitutes a new cause of action." *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981). Nevertheless, a mere new fact is not sufficient to make a second claim "different" when that new fact is part of the same transaction, or series of transactions, from which the original action arose. *See*

*Davis v. Dall. Area Rapid Transit,* 383 F.3d 309, 314 (5th Cir.2004) (barred claims were not subsequent wrong but, together with the previously asserted claims, "constitute[d] a series of connected transactions and [were] the same claim."); *Vela v. Enron Oil & Gas Co.,* No. 5:02–cv–37, 2007 WL 1564562, at *9 (S.D.Tex. May 29, 2007). In *Vela,* the court barred the plaintiff's suit based on the preclusive effect of a bankruptcy court judgment that discharged the defendant from all liability related to royalty payments under certain oil and gas leases. 2007 WL 1564562, at *8. The court noted that the "nucleus of operative facts" had been judicially defined "broadly such that, for example, a common nucleus exists if a plaintiff's claims arise out of the same contract upon which the prior adjudication centered." *Id.* at *7. Since the gravamen of plaintiff's claim in the subsequent suit was "the allegation that EOG breached its duty to properly calculate and/or pay Plaintiff royalties pursuant to both the express terms of the lease and operator covenants implied therein by law[,]" *id.* at *6, the *Vela* court affirmed the bankruptcy court's conclusion that the suit was barred by *res judicata, id.* at *8. In so holding, the court addressed the issue of whether facts subsequent to the bankruptcy court judgment gave rise to a new cause of action under *Blair. Id.* at *9 (citing *Davis,* 383 F.3d at 314).

> The conduct of which Plaintiff presently complains began prior to the [bankruptcy court judgment], and continued uninterrupted to the date Plaintiff filed the instant suit. Therefore, the segment of EOG's continuous conduct occurring after the [bankruptcy judgment] became final is not a 'subsequent wrong' for *Blair* purposes. Rather ... Plaintiff's claims centering on EOG's alleged failure to honor express provisions in the Lease, or covenants implied therein by law, are precluded by *res judicata* in their entirety.

*Id.* at *9.

The *Vela* court's reasoning is, in part, applicable to the instant case. The Plaintiffs' Complaint and the Adversary Proceeding both recite that MRI acquired ASARCO's partnership interest following ASARCO's failure to pay obligatory "Cash Calls" during 2002–2003. [Doc. No. 46 ¶¶ 12–16, 22; Doc. No. 78–1 ¶¶ 20, 29–35, 65–69].[19] In 2007, ASARCO pleaded that "[j]ust days after completely diluting ASARCO's interest, MRI elected to expel AR Montana from the MR partnership[,]" [Doc. No. 78–1 ¶ 35], and claimed that MRI had breached the partnership agreement by "fail[ing] to account for and compensate AR Montana after improperly expelling AR Montana[,]" [*id.* ¶ 67]. In the instant case, ASARCO similarly states that "after AR Montana's rights to exercise voting power and receive distributions reached zero, MRI purported to dissociate AR Montana from MRLLP[,]" [Doc. No. 46 ¶ 16] and that "MRI thus purported to secure the value of AR Montana's $100 million capital contribution (the "Capital Account") for less than $5 million in capi-

---

**19.** The Court here cites to the Plaintiffs' Original and not First Amended Complaint in the Adversary Proceeding. Plaintiffs in their brief cite Fifth Circuit law to the effect that an amended complaint supersedes and renders legally insignificant an original one. [Doc. No. 81 at 23 n. 24]. For *res judicata* purposes, however, both claims that were actually litigated and those that *could have been.* are relevant. *See In re Howe,* 913 F.2d at 1144 (5th Cir.1990). Therefore, the "Third Cause of Action: Breach of Contract and Improper Expulsion" claim must be considered as part of the Court's *res judicata* analysis, and the fact that it was later dropped in Plaintiffs' First Amended Complaint is of little consequence.

tal payments[,]" [*id.* ¶ 17]. Thus, as the *Vela* court concluded, the Court similarly finds here that the wrongful acquisition or "disassociation" of ASARCO from the partnership, the refusal to give back its partnership share (up until the 2011 tender), and any associated damages are part of the same factual series of transactions that was the subject of the Adversary Proceeding. Any breach of contract issues, claims for wrongful taking and any resulting damages for which the operative facts existed in 2007 and continued uninterrupted were all claims that either were or could have been brought in the Adversary Proceeding and as such are barred herein.

Defendants' position, however, is that the preclusive effect of the Bankruptcy Court's order dismissing the Adversary Proceeding with prejudice casts an even wider net, and that, in accordance with the traditional principles of *res judicata*, AS-ARCO's purported right to reinstatement was also conclusively and adversely decided. Defendants base this argument particularly on the inclusion of the third cause of action in ASARCO's Original Complaint before the Bankruptcy Court.

As the Court previously explained, "*res judicata* bars all claims that were or *could have* been advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated." *See In re Howe*, 913 F.2d 1138, 1144 (5th Cir.1990). The third cause of action was titled as a breach of contract claim and eventually requested damages resulting from that breach. Further, it described its request for a declaration of rights as a "remedy" for MRI's alleged breach of contract. As stated above, moreover, ASARCO never cites or refers to the Declaratory Judgment Act, nor does it ask for declaratory relief in the prayer of its Original Complaint in the Adversary Proceeding. On the other hand, ASARCO clearly requests "a declaration that [ASARCO] enjoys a right to reinstatement to its original interest level in the MR Partnership upon compliance with appropriate terms regarding reinstatement contained in the Partnership Agreement." [Doc. No. 78–1 at 15–16].

Clearly, ASARCO's rights pursuant to the Reinstatement Provision were capable of being established because they were in fact pleaded, even if eventually dropped. Noticeably missing from ASARCO's 2007 pleading, however, is any factual allegation that the *substantive* right to reinstatement had in fact been invoked by ASARCO. Indeed, MRI's Motion to Dismiss the Adversary Proceeding and in the Alternative to Transfer Venue, filed before the Bankruptcy Court, makes this very point: "[T]he Complaint conspicuously lacks any allegation that they have tendered funds in an effort to cure AR Montana's default." [No. 07–02024, Doc. No. 12 at. 22–23].

This Court therefore finds that Count Three of the Adversary Original Complaint was an attempt to plead both a Declaratory Judgment claim regarding the parties' respective future rights, and a separate breach of contract claim for other past alleged violations. The Court further holds that ASARCO's prior request for declaratory relief under the Reinstatement Provision cannot erect a *res judicata* bar to its subsequent suit for coercive relief based on this same contractual right. *See Kaspar Wire Works, Inc., v. Leco Eng'g and Machine Inc.*, 575 F.2d 530 (5th Cir. 1978); *Allegheny Int'l Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416 (3rd Cir.1994).

In *Kaspar Wire Works*, the Fifth Circuit considered whether the dismissal with prejudice of a prior declaratory judgment action seeking to invalidate a certain patent barred the defendant from arguing that the patent was invalid in a subsequent

patent infringement suit. The plaintiff argued that this defense was precluded because "the dismissal of Leco's declaratory action 'with prejudice' must be deemed a final adjudication of the merits of Leco's 'claim' of patent invalidity, thus precluding Leco here from relitigating its 'claim.'" 575 F.2d at 534. "Under the Declaratory Judgments Act, 28 U.S.C.s 2201, however, familiar principles of *res judicata* cannot be applied automatically to judgments dismissing suits for declaratory relief without stated reasons." *Id.* at 535. The court noted that traditional *res judicata* doctrine aimed towards ensuring that only one suit would provide "the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Id.* The court noted, however, that the language of the Declaratory Judgments Act itself ran contrary to this notion: "Further necessary or proper relief based on a declaratory action may be granted, after a reasonable notice and hearing, against an adverse party whose rights have been determined by such judgment." *Id.* at 537 (quoting 28 U.S.C. § 2202) (internal quotation marks omitted). "This language necessarily implies that a declaratory judgment does not embrace that aspect of res judicata known as merger: the prevailing party may seek further relief in the form of damages or an injunction." *Id.* Relying on this language, the court therefore cautioned that "a determination whether the judgment should have preclusive effect is not necessarily advanced by trying to characterize some set of issues in the declaratory suit as a 'claim' or 'cause of action' and then applying claim preclusion rules reflexively to that 'claim.'" *Id.* The court thus concluded that "[t]he more reasonable alternative, within the usual framework of res judicata principles, is to view the preclusive effect of a prior declaratory proceeding as presenting a special problem of issue preclusion." *Id.* Courts continue to

cite *Kaspar Wire Works* as authority for a declaratory judgment exception to the traditional principles of *res judicata.* *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.,* 547 F.3d 48, 53, 56 (1st Cir.2008); *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,* 880 F.2d 1291, 1294–97 (11th Cir.1989).

██ The case at bar is factually distinct from *Kaspar Wire Works,* in that the prior suit at issue in *Kaspar* only sought declaratory relief, and the Adversary Proceeding at issue here contained mixed claims. "Pleaders sometimes interpolate declaratory prayers redundantly in standard actions but this should not produce differences in the res judicata consequences of those actions ... For res judicata purposes the [prior] action should be treated ... with the usual consequences of merger, bar and issue preclusion." *Restatement (Second) of Judgments* § 33 cmt. d (1982). Critically, however, the coercive relief sought by ASARCO in the Adversary Proceeding corresponded to alleged *past* violations by MRI of the Partnership Agreement, which were allegedly committed prior to the 2007 Adversary Complaint; no claim for coercive relief was made with respect to ASARCO's future right to reinstatement. Clearly, ASARCO could not have brought suit for coercive relief at that time because the claim for such relief, assuming once more that the 2011 tender is the first time such tender was ever made, had not yet accrued. Therefore, the fact that ASARCO included a claim for declaratory relief regarding its right to reinstatement, amidst its other claim for damages in the Adversary Proceeding, should not bar it from asserting its claim for coercive relief here, which did not mature until after the fact. *See Allegheny,* 40 F.3d at 1429. A prior judgment "cannot be given the effect of extinguishing claims which did not then even exist

and which could not possibly have been sued upon in the previous case." *Id.* at 1430 (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)) (internal quotation marks omitted).

In *Allegheny,* the court considered the preclusive effect of a prior judgment that involved mixed claims for past damages and a prayer for declaratory relief with regards to the parties' future obligations. *Id.* at 1429–31. The dispute centered on a 1980 stock purchase agreement, whereby the parties agreed to share certain insurance costs for a period of time following the sale. In 1985, the seller brought suit to recover insurance costs it believed it was due under the stock purchase agreement, and included therein a request for a declaration of the parties' respective obligations in regards to insurance costs that would be incurred in the future. The parties later settled and the suit was resolved by a dismissal with prejudice. When the seller later sued again to recover insurance costs that were incurred after 1985, the buyer argued that the 1985 suit precluded the claim because the seller had included a declaratory judgment action regarding liability for future insurance costs. *Id.* at 1417–21. The court rejected the buyer's argument and concluded that the 1985 and present suit "do not involve the same causes of action." *Id.* at 1429. It reasoned:

> [I]t seems unreasonable to regard the disposition [of a claim for declaratory relief] as the equivalent of a disposition of the plaintiff's substantive claims for monetary relief as the claims mature. Indeed, at a time when the claim for declaratory relief is dismissed, the circumstances on which future liability later may be predicated will not even exist. Overall, we are convinced that whatever might be true in other contexts, for *res judicata* purposes a cause

of action for declaratory relief with respect to a party's obligation to make payments in the future should not be regarded as a cause of action for the recovery of the payments as they become due. In these circumstances, we concluded that Allegheny International's present claim for insurance costs should not be regarded as stating the same cause of action asserted in the [1985] litigation.

*Id.* at 1430–31. Parallel to the facts before the court in *Allegheny,* the prior suit at issue here involved both claims for past damages and an imbedded declaratory judgment action regarding the parties' future rights, should the money due under the Reinstatement Provision ever be tendered. The prior judgment is clearly *res judicata* with respect to all issues that were brought or could have been brought against MRI at that time; however, because the money had not yet been tendered, ASARCO could not have sued for coercive relief on its right to reinstatement because that claim had clearly not yet matured at the time of the Adversary Proceeding. Furthermore, parallel to the court's holding in *Allegheny* and in accordance with the Fifth Circuit's instruction in *Kaspar Wire Works,* ASARCO's prior claim for declaratory relief regarding its right to reinstatement cannot be considered the same "claim," for *res judicata* purposes, as its claim for coercive relief based on that right.

Accordingly, the Court refuses to give the Bankruptcy Court's order preclusive effect to the present breach of contract claim based on MRI's alleged refusal to accept the 2011 tender, as the two are not the same claim.

### ii. Final Judgment on the Merits

 The remaining prong of the *res judicata* analysis is whether the prior rul-

ing by the Bankruptcy Court is a final judgment on the merits. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from litigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir.2009). It is well settled within the Fifth Circuit that a "dismissal with prejudice" is generally a final judgment on all issues raised or that could have been raised in the suit thereby dismissed. *See id.* (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n. 8 (5th Cir.1993)). *See also Astron Indus. Assocs. Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir.1968) ("It is clear that a dismissal with prejudice at any stage of a judicial proceeding normally constitutes a final judgment on the merits of action."); Fed.R.Civ.P. 41(b). Thus, there is no question that the ruling in the Bankruptcy Court forecloses once and for all any future causes of action ASARCO may want to assert that relate to the then pending fraudulent transfer cause(s) of action (counts one and two of the Original and First Amended Complaints) and with regard to breach of contract claims and damages alleged and dropped in the third count of the Adversary Original Complaint.

The problem presented in this case is the additional effect, if any, of the third count of the Adversary Original Complaint on the current Complaint before this Court. ASARCO claims that there can be no *res judicata* effect because the third cause of action was declaratory in nature and was dropped years before the eventual dismissal with prejudice; thus, there is no final judgment on the merits on which *res judicata* may rest.

As explained above, traditional principles of *res judicata* bar any issues that were or could have been litigated, which

form part of the same transaction, or series of transactions, out of which the original action arose. *See Oreck*, 560 F.3d at 402. The Court has already discussed, however, how these same traditional principles do not apply with full force to declaratory judgment actions with regard the "same claim" prong of the analysis. *See Kaspar Wire Works*, 575 F.2d at 536–40. The *Kaspar Wire Works* court's opinion, however, extended further and engaged in a painstaking analysis of the junction of *res judicata* law and declaratory judgment practice generally. With regard to the former, the court considered both the concepts of claim preclusion (true *res judicata)* and issue preclusion (collateral estoppel). It reiterated that under the rules of claim preclusion a judgment had the effect of resolving "all issues relevant to the same claim between the same parties, whether raised at trial or not." *Id.* at 535. Conversely, issue preclusion bars relitigation "of issues *actually adjudicated,* and *essential to the judgment,* in a prior litigation between the same parties." *Id.* at 535–36 (emphasis added).

The court in *Kaspar Wire Works* then considered whether these two concepts applied equally and in the same manner to adverse declaratory judgments, as they did to judgments that did not solely concern declaratory claims. Again, the Court analyzed each preclusion situation separately. With regard to claim preclusion, the panel concluded that the language in the Declaratory Judgment Act prevented the application of the "merger and bar" doctrine of true *res judicata,* as the Court explained in-depth above. *See also Oreck*, 560 F.3d at 402 n. 3 (pointing to *Kaspar Wire Works* as precedent for determining "the res judicata effect of a dismissal with prejudice in a declaratory action[.]"). The court then turned to issue preclusion:

Because the judgment rendered in Leco's action was a consent decree dismissing the lawsuit we need not consider to what extent the resolution of a particular issue need be embodied in a declaration of rights for a reviewing court to consider the issue adjudicated for issue preclusion purposes. In the case before us no issue of law or fact was ever adjudicated.

*Id.* at 537. Thus, the court concluded, "if the parties to a suit enter into an extra judicial settlement or compromise, there is no judgment, and future litigation is not barred by *res judicata* or collateral estoppel." *Id.* at 538.

The application of *Kaspar Wire Works* to the case at hand is not without its own problems. As the Court previously explained, the cause of action at issue here was a combination pleading for both coercive relief for past violations and declaratory relief regarding the parties' future respective rights. Regardless of how one characterizes the actual claim made, the entire claim was subsequently dropped in the First Amended Complaint filed some months later. It was not part of any live pleading when the Bankruptcy Court entered the dismissal with prejudice judgment that disposed of the Adversary Proceeding.

The Court has already found that, despite the lack of a formal designation as a "Declaratory Judgment Action," the references in the Original Complaint seeking a declaration of rights was sufficient to plead a declaratory judgment action in addition to the actual pursuit of a breach of contract claim. With regard to the latter, the final dismissal with prejudice is a final judgment and is a bar to subsequent suit based upon the same claims of breach. With regard to the former, given the history of this claim and given the prevailing law in this Circuit, this Court holds that

the prior dismissal with prejudice does not bar this action, as it was not a final judgment on the merits. No *res judicata* bar was established by the putative declaratory judgment action. "[T]he rules of claim preclusion are difficult, if not impossible, to apply in the usual form when a declaratory judgment proceeding ends in a judgment that states no more than 'dismissed with prejudice.'" *Kaspar Wire Works,* 575 F.2d at 536. The Third Circuit in *Allegheny,* moreover, specifically stated "that a court should be cautious in according *res judicata* effect to the dismissal of the declaratory judgment aspects of a combination damages and declaratory judgment action, lest a settlement leading to a dismissal with prejudice have unintended consequences." 40 F.3d at 1430. *See also* 18A Charles Alan Wright et al., Federal Practice & Procedure § 4446 (2d ed.) ("Special care also should be taken if an action seeking coercive remedies with respect to past conduct and declaratory relief with respect to the future is settled and dismissed. The settlement should bar recovery for injuries inflicted after the settlement only if it is clear that the parties intended this result. . . .").

The Fifth Circuit directs that the more reasonable approach "within the usual framework of *res judicata* principles" is to view a declaratory judgment in terms of issue preclusion. Yet, for an issue to be barred by issue preclusion, it requires both that the issue actually be litigated, and that it be necessary to the judgment. These requirements are rarely satisfied in a run-of-the-mill declaratory judgment action that is settled by agreement, and was certainly not satisfied in the Adversary Proceeding.

Thus, if the parties in a prior suit for declaratory relief enter into an extrajudicial settlement or compromise, there is no judgment, and future litigation is not

barred by *res judicata* or collateral estoppel. Accordingly, this Court cannot, at this point, find that there is a final judgment that bars the breach of contract claim premised on the alleged refusal of the 2011 tender either due to *res judicata* or collateral estoppel.[20]

### D. The November 2011 Tender

In summary, this Court has held that claims raised by the Adversary Proceeding cannot be relitigated here. ASARCO has no standing, the claims were not properly disclosed for judicial estoppel purposes, and finally, with the exception of the declaratory judgment allegations, the claims it either brought or could have been brought in the Adversary Proceeding are barred by *res judicata*. These rulings would be dispositive of this entire lawsuit, but for the 2011 Reinstatement Letter sent by ASARCO to MRI.

A key component to this Court's ruling is the fact, or at least the alleged fact, that the November 2011 tender is the first and, to date, only attempt by ASARCO to actually trigger whatever rights it has under the partnership agreement to regain its partnership interest.[21] ASARCO has alleged this fact and this Court cannot at the

dismissal stage say as a matter of law that ASARCO's position is barred.

If that letter is interpreted as alleged, it would both legally and factually support a finding that ASARCO has standing. By definition ASARCO could not be refused standing for its failure to disclose a claim or cause of action in a bankruptcy proceeding that did not yet exist. Similarly, a new 2011 demand would thwart the application of judicial estoppel, as again Plaintiffs' position in the bankruptcy proceeding would not be inconsistent to its position here; the failure to disclose a claim that in fact did not exist could clearly not be a basis for estopping ASARCO from proceeding on it now. Indeed, one could very well argue that had ASARCO persisted in litigating the breach of contract claim in the Adversary Proceeding, the claim would have been dismissed as not being "ripe" because no tender of the monetary amounts due had yet been made.

Finally, if the 2011 letter gives rise to a "new" cause of action, being that it is the first time that MRI allegedly refused to honor a properly tendered reinstatement request, the prior litigation would not serve to bar it on the basis of either claim preclusion (as it would be a different claim) or issue preclusion. Further, as

---

**20.** The *Kaspar Wire Works* court quoted the *Restatement (Second) of Judgments* to the effect that:

> In the case of a judgment entered without contest by confession, consent or default, none of the issues is actually litigated. Therefore, the rules of (issue preclusion) do not apply with respect to any subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such intention.

*Id.* at 539. The court also pointedly referenced Moore's Federal Practice on the importance of the "intention of the parties" to the effect that consent/agreed judgments are *res judicata* as to the causes of action adjudged, and should be given preclusive effect under

the doctrine of collateral estoppel, if is the "virtue of the parties' intent." *Id.* at 539 (citing 1B Moore's Federal Practice PO. 443(3) p. 3909). This Court, however, cannot factor "intent" into a Motion to Dismiss analysis. This is especially true in a situation such as here where neither party has provided the Court with a relevant settlement agreement.

**21.** This Court, for purposes of this order, has assumed that Plaintiffs have a contractual right to regain their partnership interest, as the standard of review on a dismissal motion requires. This right to reinstatement is clearly hotly contested by the parties, and nothing written herein should be interpreted as a holding on the merits of this issue.

this Court has held, there is no preclusive effect with regard to the declaratory judgment request, as no issues relevant to this claim were judicially determined as part of the Adversary Proceeding.

The conclusion by this Court, therefore, is that it cannot resolve any claim predicated upon the 2011 tender on a motion to dismiss, and perhaps will not be able to resolve it on a motion for summary judgment, as factual disputes may persist. The latter statement, of course, remains to be seen.

### IV. Conclusion

This Court gave notice pursuant to Rule 12(d) of the Federal Rules of Civil Procedure that it might convert the pending dismissal motion to a Motion for Summary Judgment. [*See* Doc. No. 72]. Nevertheless, having reviewed the controlling law and the state of the record, it has concluded that the more appropriate course of action is to rule on the Motion to Dismiss and allow the lawsuit to proceed. It cannot follow this course without allowing discovery as it will eventually need to consider whatever evidence exists as to the intentions of the parties.[22] This course, however, may prove needlessly costly and inefficient. That being the case, this Court finds that the most efficient procedure for both the courts and the parties would be for this Court to rule on the Motion to Dismiss (as it is doing here) and certify such ruling for interlocutory appeal (as it is will do in a separate order).

Defendants insist, armed with a certain amount of equity, that the Adversary Proceeding resolved once and for all the issue

of ASARCO's partnership interest. They argue, at best, that the Reinstatement Letter is just one more, perhaps new, but not operative fact in the same saga and thus as a matter of law cannot be asserted. The contrary position taken by Plaintiffs is that the 2011 Reinstatement Letter constitutes the only (or at least a new) actual attempt by ASARCO to trigger its purported right to cure its earlier default.[23] The Reinstatement Provision, at least on its face, does not prohibit such a tender. Nor has anyone suggested that it is time-barred. If factually accurate and legally sound, this "new" tender offer is integral in providing standing to ASARCO, as the claim, having accrued post-confirmation, could not then belong to the estate of the debtor and need not then have been reserved. For the same reasons, it would also negate any claim for judicial estoppel, since no inconsistent position would have been taken by pursuing the claim in this Court, but not disclosing it to the Bankruptcy Court as an asset of the estate. Further, if the tender gives rise to a new claim (especially if it were the only true tender ever made to MRI), it also defeats dismissal on the basis of *res judicata* or collateral estoppel.

This Court's denial of the Motion to Dismiss, which was based upon the concepts of lack of standing, judicial estoppel and *res judicata,* was in no small part due to its inability to rationalize existing case law concerning those concepts with the 2011 tender, especially in light of the standard of review that governs motions to dismiss. It grants Defendants' motion in all other respects, leaving Plaintiffs with only a simple breach of contract claim for Defendants' alleged refusal to honor the

---

**22.** In fact, ASARCO filed a motion to this effect. [*See* Doc. No. 74]. This Court has ruled on this motion in a separate order. [*See* Doc. No. 103].

**23.** Again, this Court in ruling on the Motion to Dismiss does not take, and is not taking, a position on the merits of ASARCO's claim that it actually has a right to force MRI to restore its partnership share.

2011 tender offer. Nevertheless, given the controlling importance that this Court has placed upon the allegations concerning the Reinstatement Letter, it feels compelled to afford the Fifth Circuit the opportunity to resolve the propriety of this ruling before allowing the parties to engage in what may prove to be an intensive and expensive litigation battle (which will be needless if this Court is indeed incorrect). The Court will therefore, by separate order, certify this ruling for an interlocutory appeal.

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss [Doc. Nos. 23, 24, & 78].